**Damion Denard HUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–91–01399–CR.**

Court of Appeals of Texas,
Dallas.

March 25, 1993.

---

Keith D. Carden, Las Colinas, for appellant.

Lori L. Ordiway, Dallas, for appellee.

Before LAGARDE, BURNETT and WHITTINGTON, JJ.

### OPINION

LAGARDE, Justice.

A jury found Damion Denard Hunt guilty of murder and the trial court assessed punishment at fifty years' imprisonment. On appeal, Hunt asserts in one point of error that the trial court reversibly erred by overruling his objection during voir dire to the State informing the jury panel about the range of punishment for voluntary manslaughter. Because we conclude that the trial court did not abuse its discretion, we overrule Hunt's point and affirm the trial court's judgment.

### FACTUAL BACKGROUND

Rovetta Malone testified that a few weeks before the death of her boyfriend, Devin "Skeeter" Davis, she and Davis were walking out of the gym at the Beckley–Saner Recreation Park when he noticed three men staring at them. Davis asked one of the men why he was staring. The man replied that he was not staring at him, and the man and Davis began fighting. The other two men also jumped into the fight. Davis beat up one of the men, MacArthur Carter. Another of the men pulled a gun and threatened to shoot Davis. Larry Lewis, a director at the recreation center, eventually broke up the fight.

On July 18, 1991, Malone and Davis again went to the recreation park. While they were lying on a picnic table by the pool, Davis told her that earlier that day in the gym he had seen the three men with whom he had fought. While Malone and Davis were discussing their impending marriage, five men ran up and surrounded the picnic table. One man, later identified as Hunt, jumped onto the table and fired four shots at Davis. Another of the five men, MacArthur Carter, also had a gun. Malone ran across the street to call the police. When she returned, Davis was dead.

On cross-examination, Malone testified that Hunt was not one of the men involved in the fight with Davis outside the gym a few weeks prior to his death. On redirect, however, Malone said that she was uncertain whether Hunt was involved in the first fight with Davis. Larry Lewis testified that Hunt was involved in the first fight.

After his arrest, Hunt gave a written statement to Officer Linda Erwin in which he stated that Davis had tried to start a fight with him in June of 1991 and had always stared at him since then. Hunt admitted to jumping up on the picnic table on which Davis and his girlfriend were lying and firing four to five shots. Later, Hunt requested to speak with Erwin again and told her that MacArthur Carter shot Davis. The second statement was not reduced to writing.

### VOIR DIRE

During voir dire, the prosecutor informed the jury of the range of punishment for murder. As he attempted to do the same for voluntary manslaughter, defense counsel requested to approach the

bench. At that time an off-the-record discussion was held outside the presence of the jury. When the discussion concluded, the prosecutor informed the jury of the range of punishment for voluntary manslaughter. He next explained to the panel the difference between voluntary manslaughter and murder. At the close of voir dire, the following discussion occurred between defense counsel and the court:

[DEFENSE COUNSEL]: Your Honor, at this time, could we log in the record my objection to Mr. Nancarrow's argument and note your overruling my objection?

THE COURT: Yes. Mr. Nancarrow argued that the punishment range, for murder—and he gave the correct punishment range and then he gave the punishment range for the offense of voluntary manslaughter prior to his giving the punishment range for the offense of voluntary manslaughter.

Defense attorney asked to approach the bench, and he lodged an objection to Mr. Nancarrow's giving the punishment range for voluntary manslaughter since the jury would not be setting punishment and it was not a matter that the jury should consider for any reason. I overruled the objection, allowed him to go into that, but I did make it clear at the time that the defendant's objection to that was timely made and would be placed into the record in a more complete manner at a later point. But it definitely was timely made, and it was ruled upon at that time.

In his sole point of error, Hunt asserts that the trial court erred by allowing the prosecutor to disclose the range of punishment for voluntary manslaughter during voir dire. Hunt argues that this was improper because he did not file a written election for the jury to assess punishment before the commencement of voir dire and, therefore, it was the trial court's duty to assess punishment. *See* TEX.CODE CRIM. PROC.ANN. art. 37.07, § 2(b) (Vernon Supp. 1993). Hunt in fact filed a written election for the trial court to assess his punishment. *See id.*

The State responds that (1) Hunt has failed to preserve error because his trial objection does not match his point of error and (2) it was entitled to voir dire the jury panel about the range of punishment because the jury might have been called upon to assess punishment under article 37.07, section 2(b). The State correctly notes that only an abuse of discretion by the trial court in conducting voir dire merits reversal on appeal. *See Dowden v. State,* 758 S.W.2d 264, 274 (Tex.Crim.App.1988).

■ In essence, Hunt complains on appeal that the trial court erred by allowing the State to inform the jury panel regarding the range of punishment for voluntary manslaughter because the court, not the jury, would assess punishment. As repeated for the record by the trial court, defense counsel timely objected to the State's voir dire about the punishment for voluntary manslaughter because the jury would not be assessing punishment. We hold that the point of error does match Hunt's objection at trial and error, if any, was not waived. *See Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).

■ We conclude, however, that Hunt's point lacks merit. Hunt was charged with murder, a first degree felony. *See* TEX.PE-NAL CODE ANN. § 19.02(b) (Vernon 1989). The range of punishment for a first degree felony is confinement for life or for any term of not more than ninety-nine years or less than five years with an optional fine not to exceed $10,000. TEX.PENAL CODE ANN. § 12.32(a) & (b) (Vernon Supp.1993). Voluntary manslaughter can be a lesser-included offense of murder. *Sattiewhite v. State,* 786 S.W.2d 271, 287 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). Voluntary manslaughter is a second degree felony. TEX.PENAL CODE ANN. § 19.04(d) (Vernon 1989). Punishment for a second degree felony is confinement for any term of not more than twenty years or less than two years, with an optional fine not to exceed $10,000. TEX.PENAL CODE ANN. § 12.33(a) & (b) (Vernon 1974).

The Texas Code of Criminal Procedure provides for the challenge of a prospective juror who "has a bias or prejudice against *any phase of the law* upon which the State is entitled to rely for conviction or punishment." TEX.CODE CRIM.PROC.ANN. art. 35.16, § (b)(3) (Vernon Supp.1993) (emphasis added). The State is entitled to voir dire the jury panel regarding lesser-included offenses. *Alfano v. State,* 780 S.W.2d 494, 495 (Tex.App.—Corpus Christi 1989, no pet.). *Cf. Santana v. State,* 714 S.W.2d 1, 10 (Tex.Crim.App.1986).

Hunt cites three decisions—*Bevill v. State,* 573 S.W.2d 781, 783 (Tex.Crim.App. 1978) (op. on reh'g); *Martinez v. State,* 588 S.W.2d 954 (Tex.Crim.App. [Panel Op.] 1979); and *Johnson v. State,* 766 S.W.2d 559 (Tex.App.—Beaumont 1989, pet. ref'd)—in support of his point of error.

*Johnson* is distinguishable. The error in *Johnson* was the inclusion of prior convictions during voir dire. That is not so here. In *Johnson,* the Beaumont Court of Appeals interpreted *Martinez* and *Bevill* as allowing the State to question prospective jurors as to the range of punishment only if the jury *is* to assess punishment and the punishment is not absolutely fixed by law. *See id.* at 560 (emphasis added). The court then concluded that because the jury was not to assess punishment in that case, the trial court erred in overruling Johnson's objections to the prosecutor's voir dire regarding punishment alternatives. *See id.* We conclude that *Johnson* misinterprets *Bevill.* The court in *Bevill* said "[w]here the jury *may* be called upon to assess punishment, both the State and the defendant have a right to qualify the jury on the full range of punishment." *Bevill,* 573 S.W.2d at 783 (emphasis added).

In this case, the jury might have been called upon to assess punishment because the code of criminal procedure allows a defendant, with the consent of the State, to change his election if a finding of guilt is returned. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 2(b) (Vernon Supp.1993). *See also Benson v. State,* 496 S.W.2d 68, 70

(Tex.Crim.App.1973); *Johnson,* 766 S.W.2d at 560 (Brookshire, J., dissenting).

The trial court did not abuse its discretion by permitting the State to voir dire the panel about voluntary manslaughter and its range of punishment. Assuming *arguendo* that the trial court did abuse its discretion in allowing such voir dire, after applying the test in *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989), we conclude that any abuse of discretion was harmless beyond a reasonable doubt. *See* TEX.R.APP.P. 81(b)(2). Accordingly, we overrule Hunt's sole point of error.

We affirm the trial court's judgment.