TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00105-CR







Dustin Timothy Burk, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 93-6101, HONORABLE JON N. WISSER, JUDGE PRESIDING







 A jury convicted Dustin Timothy Burk of jumping bail between the guilt-innocence
and punishment phases of his trial on a charge of sexual assault. Tex. Penal Code Ann. § 38.10
(West 1994) (bail-jumping). The trial court assessed punishment at ten years in prison for bail
jumping, to run consecutively to a twenty-five-year sentence imposed in the sexual assault case. 
Burk complains (1) that the court allowed questions during voir dire about jury panelists' attitudes
toward punishment even though the jury was not going to assess punishment, and (2) that the
court admitted evidence in violation of Texas Rules of Evidence 403 and 404(b). We will affirm
the judgment.

 Burk disputes the admissibility of the evidence, not its sufficiency. He was released
on bond following his arrest on the charge of sexual assault. The bond required that Burk appear 

instanter before the 147th Judicial District Court of Travis County, Texas or before 
such Judicial District court to which this cause has or may be transferred as
provided by law, at its present term, if now in session, or at its next regular term,
if now in vacation, to be held at the Court House of Travis County, in the City of
Austin, Texas, and further, shall well and truly make his personal appearance
before the said 147th Judicial District Court or before such Judicial District Court
to which the cause has or may be transferred, for any and all subsequent
proceedings that may be had relative to the aforementioned charge or such other
criminal charge as may arise from the same transaction in the course of the
criminal action based on such charge, and there remain from day to day and from
term to term of said court, until discharged by due course of law . . . .



After the jury convicted Burk of sexual assault, the State moved to increase the bond and to
remand Burk to the sheriff's custody. The judge in the trial of the underlying offense testified in
the bail-jumping trial, and said that he overruled the State's motion because Burk had made all
of his prior court appearances. The judge testified that he told Burk to return the following day
for the punishment phase. Burk did not appear.

 Burk's then-girlfriend testified that they fled to Mexico because Burk refused to
serve time for a crime he said he did not commit. They next went to Colorado before going to
Houston. Burk undisputedly used fake names and identification cards, including when law
enforcement officials came to arrest him for bail-jumping.

 In his closing statement below, Burk argued that the State did not adequately prove
the content of the bond. While conceding that he did not return for the punishment stage of the
trial, Burk argued that there was no evidence (1) that the signature on the bond was his, (2) that
he was released from custody based on the bond, (3) of what "instanter" means, (4) of when the
court's term ran, or (5) that he was arrested based on the bond. There was no evidence that the
signature was not his or that his release and arrest did not comply with the terms of the bond, but
Burk contended the State failed to carry its burden. Burk does not assert these arguments directly
on appeal, but contends that the district court's admission of evidence of extraneous offenses
distracted the jury from focusing on his arguments.

 Burk's first ten points of error concern evidence he believes was erroneously
admitted. The rules of evidence Burk invokes guard against admission of evidence that might
distract the fact finder from considering the elements of the crime at issue. Rule 404(b) bars
evidence of other crimes, wrongs or acts to prove the character of the person in order to show
conformity with that character; such evidence, however, may be admissible to show intent or
knowledge. Tex. R. Evid. 404(b). Rule 403 permits exclusion of relevant evidence if its
probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues,
misleading of the jury, undue delay, or needless presentation of cumulative evidence. Tex. R.
Evid. 403.

 We can reverse a trial court's decision on the admissibility of evidence only for an
abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). We
cannot intercede if the trial court's ruling was within the zone of reasonable disagreement. Id. 
The Court of Criminal Appeals has held that evidence of flight can be admissible to show an
inference of intent or knowledge of guilt even if it also proves extraneous bad acts. Felder v.
State, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992). The Court of Criminal Appeals further wrote:


Like flight, the fact that appellant presented false identification to Officer Carlson
when he was pulled over indicates a "consciousness of guilt" and an awareness that
he needed to conceal his identity from law enforcement officials. Although
producing false identification to a police officer may be evidence of a wrong act,
which is not admissible to prove the character of a person to show that he acted in
conformity therewith, it is admissible for other purposes such as proof of
knowledge. Rule 404(b), supra. The trial court must be given due deference when
deciding whether evidence has a "tendency to make the existence of any fact that
is of consequence to the determination of the action more probable or less
probable" and therefore relevant under Tex. R. Crim. Evid., Rules 401, 402 and
403. Montgomery, supra. "The trial court must be given wide latitude to exclude,
or, particularly in view of the presumption of admissibility of relevant evidence,
not to exclude misconduct evidence as he sees fit." Montgomery, 810 S.W.2d at
390. The trial court may reasonably have believed the testimony was relevant to
show appellant's knowledge that a crime had been committed and that he was a
likely suspect.



Id.

 Burk contends the court should have excluded evidence about his activities in the
months after he missed the punishment phase of his sexual-assault trial. He contends that the trial
court should have excluded evidence that he used fake names and identification cards; that he
crossed state and national boundaries; that local, state, and federal law enforcement officials
engaged in extensive attempts to find him; and that a federal arrest warrant was issued for his
commission of the federal offense of flight. He argues that the State used this evidence to show
character conformity in violation of Rule 404; he contends it was not necessary to show intent
because intent was not contested. He also contends that, in violation of rule 403, admission of
this evidence unfairly prejudiced the jury against his argument that he did not violate the terms
of his bail agreement and caused them to convict him for bad character rather than for this
offense.

 The State contends that the evidence was admissible because all the evidence related
to Burk's flight, which showed his intent not to appear, his consciousness of guilt, and the absence
of mistake. The State also argues that Burk failed to preserve many of his complaints for
appellate review, either by failing to object, failing to object with sufficient specificity, failing to
object to other similar evidence, failing to make an appellate argument conforming with the
objection made, or failing to make an adequate appellate argument. Without expressing any
opinion regarding the waiver arguments, we will address the merits of Burk's contentions.

 The statute prohibiting bail jumping provides in part as follows:


(a) A person lawfully released from custody, with or without bail, on condition
that he subsequently appear commits an offense if he intentionally or
knowingly fails to appear in accordance with the terms of his release.


* * *



(c) It is a defense to prosecution under this section that the actor had a reasonable
excuse for his failure to appear in accordance with the terms of his release.


Tex. Penal Code Ann. § 38.10 (West 1994).

 We conclude that Burk failed to show that the trial court abused its discretion by
admitting evidence that Burk used fake names and crossed state and national boundaries while
evading custody. Burk's use of fake names and crossing of state and national boundaries are bad
acts primarily, if not solely, because he jumped bail, avoided apprehension, and did not
voluntarily appear in or return to court; because these acts extended and preserved his failure to
appear for the punishment phase, they are not truly extraneous to the bail-jumping offense. These
acts, plus Burk's production of a false driver's license (1) when captured for bail jumping, show a
continued attempt to evade custody and allow inferences that he knew he was guilty of failing to
appear, that he intended not to appear in court, and that he did not make a mistake or have an
excuse for failing to appear. See Felder, 848 S.W.2d at 98. Though Burk argues there was no
need to produce such evidence because he did not dispute the intent element, there is no indication
that he communicated that concession at trial to the State, the court, or the jury until his closing
statement after all the evidence had been admitted. We conclude that, in the absence of a
stipulation conceding the intent and excuse elements, the State was not constrained to rely on an
inference from Burk's failure to appear that he did not intend to appear and had no excuse for not
appearing. The court did not abuse its discretion by allowing the State to prove these elements
of the offense.

 Evidence of federal charges for flight and of the involvement of federal authorities
is not evidence of an extraneous bad act. Testimony showed that the federal charge and manhunt
were for the same failure to appear charged here; Burk federalized the criminality of his flight by
crossing state and national boundaries. The evidence of the federal charge potentially averts jury
speculation by explaining the involvement of federal law-enforcement authorities. His success in
evading this task force arguably shows the degree of his determination not to appear. The
evidence is not unfairly prejudicial or confusing because it describes the charged conduct of
fleeing custody. 

 We do not believe that the evidence of his activities after failing to appear unfairly
prejudiced the jury against Burk or distracted them from the elements of the offense. Burk's
activities after failing to appear were damaging to his defense only if the jury believed he was
guilty of failing to appear. We reiterate that the evasive activities witnesses described are not
necessarily bad acts; no one testified that Burk stole anything, defrauded anyone, threatened
anyone, or committed any crime in order to facilitate his failure to appear. (In fact, the court
sustained objection to testimony that he possessed controlled substances when arrested for bail
jumping.) If Burk violated the terms of his bond agreement, his flight and subterfuge can be
interpreted as showing a guilty conscience. If he did not violate his bond, then the jury could see
subsequent acts as directed at fleeing punishment on the sexual-assault conviction.

 We find no abuse of discretion in either the district court's decision to admit this
evidence as relevant to show intent to flee and knowledge of guilt or in its conclusion that the
probative value of this evidence was not substantially outweighed by the risk of unfair prejudice
or confusion. We overrule points of error one through ten.

 By point of error eleven, Burk contends that, by letting the State question panelists
about their attitudes toward punishment, the district court erred because the State could


identify those panel members who would rather inflict suffering on a defendant
than rehabilitate him/her or deter future crime for the safety of society. It is
arguable that the individual who views revenge as the most important goal of the
criminal justice system is more likely to be confident in the belief that people are
seldom wrongfully accused and so more likely to find the defendant guilty.


Appellant's brief at 18-19. Burk relies on a case from the Beaumont court and tries to distinguish
one from the Dallas court. See Johnson v. State, 766 S.W.2d 559, 559-560 (Tex. App.--Beaumont
1989, pet. ref'd) (voir dire questions about enhancement harmed defendant because jurors, who
would not assess punishment, assumed from questions that defendant had prior convictions); see
also Hunt v. State, 852 S.W.2d 278, 281 (Tex. App.--Dallas 1993, no pet.) (defendant's option
to change mind and opt for jury punishment empowers State to inquire about punishment at voir
dire).

 We conclude that Burk has not shown that the district court reversibly erred by
allowing the State to inquire about punishment during voir dire. The Johnson case does not
control here because, unlike that defendant's showing that several jurors unfairly inferred that he
had prior convictions, there is no proof in the record here that the State's questions provoked any
improper speculation. See Johnson, 766 S.W.2d at 560. We reject Burk's argument that the
State's ability to refuse to consent to a disadvantageous change in election (2) renders the Dallas
court's reasoning in Hunt disingenuous. See Hunt, 852 S.W.2d at 281. The questioning lets the
State exercise its option to consent to a changed election in an informed fashion. Again, the State
is not necessarily the sole beneficiary of this questioning; the jury's answers can also inform the
defendant whether he should change his mind and request jury punishment. See Bevill v. State,
573 S.W.2d 781, 783 (Tex. Crim. App. 1978) (defendant elected jury punishment; court held
where jury may assess punishment, both State and defendant can qualify jury on full range of
punishment). Even if the State theoretically could use the punishment attitude information to
retain jurors who favored "revenge as the most important goal of the criminal justice system,"
there is no support in the pattern of strikes that the State did so in this case. (3) Just as the State
could use the responses to assess jury attitudes, Burk and his counsel could use them to identify
potential punishment zealots and move to strike them either for cause or peremptorily; there is no
unfair advantage to the State. We find no harmful error in allowing this line of inquiry during voir
dire.

 Having overruled all of Burk's points of error, we affirm the judgment.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: November 12, 1999

Do Not Publish
1. Possession of a false driver's identification card may be a crime, but Burk's use of it is
admissible to show his intent to evade capture and show he knew he was guilty of bail-jumping.
2.   See Tex. Code Crim. Proc. Ann. art. 37.07 § 2(b) (West Supp. 1999).
3. The State asked panelists to state which of the three goals of the criminal justice system is
most important. This table lists the goals and combinations thereof asserted by the jury panelists
as a whole as most important. (No panelist named revenge or punishment as the chief goal.) 



 Deter Rehabilitate Deter & Rehabilitate All equal


struck for cause 2 1

State strike 2 4 4*

defense strike 2 3 5*

served on jury 2 1 1 8

not reached 2 2 3 2


total 10 3 11 18


* The number of respondents stating "all equal" in the categories exceeds the total number listed

 because two panelists struck by both the State and the defense gave this response. 


From the only group naming punishment as a criminal-justice goal (the "all equal" group), the
State struck one more panelist than did Burk. The State, however, did not strike any panelist who
rated rehabilitation as the chief goal; one such panelist served on the jury.


 We conclude that Burk has not shown that the district court reversibly erred by
allowing the State to inquire about punishment during voir dire. The Johnson case does not
control here because, unlike that defendant's showing that several jurors unfairly inferred that he
had prior convictions, there is no proof in the record here that the State's questions provoked any
improper speculation. See Johnson, 766 S.W.2d at 560. We reject Burk's argument that the
State's ability to refuse to consent to a disadvantageous change in election (2) renders the Dallas
court's reasoning in Hunt disingenuous. See Hunt, 852 S.W.2d at 281. The questioning lets the
State exercise its option to consent to a changed election in an informed fashion. Again, the State
is not necessarily the sole beneficiary of this questioning; the jury's answers can also inform the
defendant whether he should change his mind and request jury punishment. See Bevill v. State,
573 S.W.2d 781, 783 (Tex. Crim. App. 1978) (defendant elected jury punishment; court held
where jury may assess punishment, both State and defendant can qualify jury on full range of
punishment). Even if the State theoretically could use the punishment attitude information to
retain jurors who favored "revenge as the most important goal of the criminal justice system,"
there is no support in the pattern of strikes that the State did so in this case. (3) Just as the State
could use the responses to assess jury attitudes, Burk and his counsel could use them to identify
potential punishment zealots and move to strike them either for cause or peremptorily; there is no
unfair advantage to the State. We find no harmful error in allowing this line of inquiry during voir
dire.

 Having overruled all of Burk's points of error, we affirm the judgment.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: November 12, 1999

Do Not Publish
1. Possession of a false driver's identification card may be a crime, but Burk's use of it is
admissible to show his intent to evade capture and show he knew he was guilty of bail-jumping.
2.   See Tex. Code Crim. Proc. Ann. art. 37.07 § 2(b) (West Supp. 1999).
3. The State asked panelists to state which of the three goals of the criminal justice system is
most important. This table lists the goals and combinations thereof asserted by the jury panelists
as a whole as most important. (No panelist named revenge or punishment as the chief goal.) 



 Deter Rehabilitate Deter & Rehabilitate All equal


struck for cause 2 1

State strike 2 4 4*

defense