**Affirmed and Opinion filed November 22, 2011.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-00975-CR

---

### DANNY MCBRIDE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1193223**

---

## OPINION

A jury convicted appellant of aggravated assault, and the trial court sentenced him to 45 years' confinement. Appellant challenges his conviction in four issues, arguing that the evidence is legally insufficient to support his conviction, and that the trial court erred by allowing the State to ask punishment questions during voir dire, denying his motion to suppress, and refusing to submit a jury charge on the issue of self defense. We affirm.

### BACKGROUND

Appellant was employed as a driver for a delivery company in Houston. Appellant's supervisor, Arthur Hines, fired appellant after two weeks of work. Appellant

had paid part of a security deposit for a radio, which he did not return to the company. When appellant entered the company's premises on November 13, 2008, he was told he would not receive the $20 deposit. Appellant then "got to swearing and cussing and calling everybody an MF and calling [Hines] the N word. And it just went on and on." Hines left the office but appellant followed him outside and into a warehouse, getting very close to Hines and spitting in his face. After two or three minutes, Hines grabbed a banding machine, which is "like a big stapler" — a ten-inch flat piece of steel with a steel handle. Hines testified, "I told him if he didn't get out of my face, I was going to hit him upside his head."

Appellant then went to his car while Hines returned to his office. Hines was talking to some drivers over his radio when appellant reentered the office. Appellant was holding a pistol "down by the side of his leg." Appellant told Hines that he would blow Hines's brains out, and appellant told another employee, Gregory Kitchen, "I'm going to kill this nigger." Hines explained, "I felt threatened that he might shoot me or might shoot one of the other people in the office." Kitchen testified, "[A]t one point [appellant] raised the gun up towards Mr. Hines' head with his finger on the trigger." Hines testified he "never saw him raise [the gun]."

Appellant eventually left. On the following day, Officer Jacko Ruiz arrested appellant after he observed appellant walking on the wrong side of the street when a sidewalk was present. *See* Tex. Transp. Code Ann. § 552.006 (Vernon 2011). Ruiz found a pistol in appellant's waistband, and the pistol was admitted into evidence at trial after the court denied appellant's motion to suppress. Kitchen testified that the pistol appeared to be the same one appellant had used the day before.

## SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant argues that the evidence is legally insufficient to sustain his conviction because there was "no evidence that appellant threatened [Hines] by using and exhibiting a handgun."

2

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, we defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

A person commits aggravated assault if he or she commits assault and uses or exhibits a deadly weapon during the commission of the assault. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001); *Banargent v. State*, 228 S.W.3d 393, 397 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Appellant concedes that his "words could be interpreted as a threat of imminent bodily injury" — that is, an assault, *see* Tex. Penal Code Ann. § 22.01(a)(2) (Vernon 2011) — but he argues that he "used his mouth to convey those threats and not the pistol." Thus, appellant challenges the sufficiency of the evidence to support the jury's finding on the element of "uses or exhibits a deadly weapon during the commission of the assault." *See* Tex. Penal Code Ann. § 22.02(a)(2) (Vernon 2011).

The evidence establishes that appellant held a gun at his side while telling Hines he would blow Hines's brains out. Appellant said he would kill Hines, and Kitchen testified that appellant raised the gun to Hines's head with a finger on the trigger. The evidence in this case clearly is sufficient to support a finding beyond a reasonable doubt that appellant used or exhibited a deadly weapon during the assault. *See, e.g.*, *Villatoro v. State*, 897 S.W.2d 943, 945 (Tex. App.—Amarillo 1995, pet. ref'd) (sufficient evidence existed when defendant pointed a deadly weapon at complainant); *Gaston v. State*, 672 S.W.2d 819, 821 (Tex. App.—Dallas 1983, no pet.) (sufficient evidence existed when

defendant held the shotgun by his side and pointed toward the floor and never verbally threatened complainant); *May v. State*, 660 S.W.2d 888, 889 (Tex. App.—Austin 1983) (sufficient evidence existed when defendant displayed the shotgun and pointed it in complainant's general direction), *aff'd*, 772 S.W.2d 699 (Tex. Crim. App. 1984); *see also Dickerson v. State*, 745 S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ("The pointing of a gun alone establishes the threat.").[1]

Appellant's third issue is overruled.

## VOIR DIRE

In his first issue, appellant argues that the trial court erred by permitting the State to ask venire members multiple questions related to punishment and discussing punishment issues during voir dire, thus "implicitly suggesting that he had prior criminal convictions."

During the State's voir dire, the following exchange occurred:

JUROR NO. 51: Is the person's previous record — does that come into play in a case like this?

THE STATE: Usually never. And I can't comment on anybody's previous record or lack thereof, and you won't hear it in trial unless the Judge deems that it's available to come in. And that's really all I want to say about it, because I don't want to prejudice too much.

Now suppose with me for a minute that we have a trial and you find the defendant guilty. Not this particular defendant. Just — we'll just use a hypothetical situation. . . .

\*                    \*                    \*

---

[1] Appellant contends there are "gross inconsistencies in the testimony of the two witnesses present at the time of the alleged assault" because Kitchen testified that appellant raised the gun and Hines testified that he did not see appellant raise the gun. We disagree with this contention. Hines testified that he turned away from appellant at one point. Thus, Hines's testimony that he did not see appellant raise the gun did not necessarily contradict Kitchen's testimony. Regardless, we defer to the jury's resolution of any such conflicts in the testimony and issues of credibility. *See Isassi*, 330 S.W.3d at 638.

You find this person guilty beyond a reasonable doubt, so they're guilty. And then it's up to you. In this case the Judge is going to be deciding punishment, so we don't need to worry about that as much. But I would like to know — and again, you're not going to know what a person's criminal record is, most likely, if they have one or not. You're not going to know any of the mitigating circumstances of that person's life necessarily until you start — you know, you might hear some of that if you're deciding the punishment. But especially for guilt or innocence, you're not going to hear any of that.

DEFENSE COUNSEL: Your Honor, may I approach for a second?

THE COURT: You may.

(At the bench)

DEFENSE COUNSEL: Judge, it seems like we're getting — we shouldn't be getting into any issue about punishment. And by addressing any issues regarding history, it creates an implication that there is one.

THE STATE: I was asked specifically by a juror, and I think I negated that.

THE COURT: You did good in negating it, but now you're belaboring the point.

THE STATE: Then I'll stop.

(Continuing in jury's hearing)

THE STATE: Now, in general, when we're trying to decide what to do with someone if you find him guilty, Juror No. 1, is for anybody that's guilty of a crime, is punishment or rehabilitation more important?

DEFENSE COUNSEL: Your Honor, may I approach again?

THE COURT: You may.

(At the bench)

DEFENSE COUNSEL: Again, there shouldn't be any voir dire at all on the issue of punishment if the Court is going to determine punishment.

THE STATE: What I'm getting at, Judge, is in the criminal justice system, in general, if they feel that — is it more important from a standpoint of

when you're deciding what to do with people who break the law, is punishment more important, is rehabilitating those people?

DEFENSE COUNSEL: I've been over this issue before, and generally it's not an admissible line of questioning when the Court determines punishment.

THE COURT: It is important to see if — go ahead and explain.

THE STATE: In order to gauge somebody's feelings on whether or not it's more important to punish people or to rehabilitate them — I mean, your guy is not probation eligible anyway, so I didn't touch on any specific issues.

DEFENSE COUNSEL: So, therefore, it's not relevant to anything we're doing here.

THE STATE: It's relevant to someone's feeling on crime, and I can ask it like that if you want me to.

THE COURT: Okay. So what's your objection, Counsel?

DEFENSE COUNSEL: My objection is to relevance. And since we're not going to the jury for punishment, it just confuses the issue and it would prejudice my client.

THE COURT: Okay. Objection is overruled but noted for the record.

DEFENSE COUNSEL: Okay. Thank you, Judge.

The State then asked the venire, "[F]rom a societal standpoint, when dealing with crime do you feel that it's more important to punish people or to rehabilitate people?"[2] Each venire member responded to the question; most picked one of the two options, some chose both, and some said it would depend on the circumstances.

Later during voir dire, a venire member told the court outside the presence of the venire that she inferred from the State's comments about a criminal background that appellant "has a background that would adversely affect." The venire member said, "I'm

_____

[2] After eliciting the first "it depends" response, the State explained, "Let's put it this way. You're required to give me an answer of punishment or rehabilitation."

sort of thinking he might be more likely to be guilty based on that." The court struck her from the panel by agreement.

Appellant's first issue conflates two separate complaints, only one of which is preserved for our review. An appellant must receive an adverse ruling from the trial court to preserve error for review. *See, e.g.*, Tex. R. App. P. 33.1(a); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). No error is preserved if the trial court did not rule on the appellant's objection unless the appellant objected to the trial court's failure to rule. *See* Tex. R. App. P. 33.1(a)(2)(B); *Tucker*, 990 S.W.2d at 670. Further, no error is preserved if the appellant received all of the requested relief. *See, e.g.*, *Adams v. State*, 685 S.W.2d 661, 670 (Tex. Crim. App. 1985). Thus, no error is preserved if the trial court sustained the appellant's objection to an improper comment made in front of the jury and the appellant did not request an instruction to disregard and mistrial. *See Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992) (improper statement by witness); *Koller v. State*, 518 S.W.2d 373, 375 n.2 (Tex. Crim. App. 1975 (improper jury argument).[3]

Appellant first complains of the State's general comments about a defendant's criminal record. When counsel objected to these comments, the trial court said the State was "belaboring the point," and the State responded, "Then I'll stop." The State did not again address the issue of a defendant's criminal background or history. Appellant did not receive a ruling on the objection, adverse or otherwise.[4] But even if we assume he received a favorable ruling, he did not ask the court to instruct the jury to disregard the

---

[3] *See also Schumacher v. State*, 72 S.W.3d 43, 46–47 (Tex. App.—Texarkana 2001, pet. ref'd) (no error preserved when the State inappropriately characterized the defendant in an unfavorable light during voir dire; counsel's objection was sustained but no further relief was requested); *Davis v. State*, 894 S.W.2d 471, 474 (Tex. App.—Fort Worth 1995, no pet.) (no error preserved when the State asked an improper question during voir dire; counsel's objection was sustained, and the court instructed the jury to disregard, but counsel never asked for the panel to be quashed).

[4] *Cf. Grayson v. State*, 192 S.W.3d 790, 793 (Tex. App.—Houston [1st Dist.] 2006, ) (trial court's response to the appellant's jury-argument objection — "Let's proceed." — was not a ruling on the objection).

comments or to declare a mistrial. When the State voluntarily refrained from making any additional comments on the same subject, appellant received all the relief he requested. No error is preserved for our review regarding the State's comments about a defendant's criminal record.

Next, appellant complains that the State asked the venire members to describe whether they felt it was more important to punish or rehabilitate. Appellant argues this question was irrelevant because he had filed a written election to have the trial court, rather than the jury, assess punishment.

A trial court has broad discretion over the process of selecting a jury, and we will not reverse the trial court's decision on the propriety of a particular voir dire question absent an abuse of discretion. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). A trial court abuses its discretion if it allows the State to ask an improper question. *Atkins v. State*, 951 S.W.2d 787, 790 (Tex. Crim. App. 1997). A question is improper if it (1) "attempts to commit the juror to a particular verdict based on particular facts" (a commitment question); or (2) "is so vague or broad in nature as to constitute a global fishing expedition." *Sells*, 121 S.W.3d at 756. A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* Generally, "questions that are not clearly improper on some other basis may be asked for purposes of intelligently exercising peremptory challenges subject to reasonable time limits imposed by the trial court." *Barajas v. State*, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002) (citing *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex. Crim. App. 1985)).

Appellant and the State note that the Beaumont and Dallas Courts of Appeals diverge over whether "punishment issues" may be discussed during voir dire when the defendant has elected for punishment to be assessed by the court. *Compare Johnson v. State*, 766 S.W.2d 559 (Tex. App.—Beaumont 1989, pet. ref'd) (finding error when the State discussed punishment ranges for enhancements during voir dire), *with Hunt v. State*, 852 S.W.2d 278 (Tex. App.—Dallas 1993, no pet.) (finding no error when the State

discussed the punishment range for a lesser-included crime during voir dire). Of primary concern in those cases was the Court of Criminal Appeals' holding, "Where the jury *may* be called upon to assess punishment, both the State and the defendant have a right to qualify the jury on the full range of punishment." *Bevill v. State*, 573 S.W.2d 781, 783 (Tex. Crim. App. 1978) (emphasis added). The Dallas Court of Appeals held that the punishment issue in that case properly was addressed during voir dire because "the jury might have been called upon to assess punishment" under Section 2, Article 37.07, of the Code of Criminal Procedure, which "allows a defendant, with the consent of the State, to change his election if a finding of guilt is returned." *Hunt*, 852 S.W.2d at 281; *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 2009).[5]

These decisions are not instructive for resolving the issue in this case because the State's question did not address a mere "punishment issue." The State's question — whether the venire members felt punishment or rehabilitation was more important when dealing with crime — sought only to discover each "prospective juror's general philosophical outlook on the justice system (such as whether the retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system). The parties are given broader latitude to ask such general background and philosophy questions.'" *Davis v. State*, __ S.W.3d __, 2011 WL 1135373, at *1–2 (Tex. Crim. App. March 30, 2011) (quoting *Sells*, 121 S.W.3d at 756 n.22); *see Smith v. State*, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985) (proper questions related to the venire's "idea of punishment" and "what they think its purpose should be"); *Campbell v. State*, 685 S.W.2d 23, 25 (Tex. Crim. App. 1985) (finding the following question proper: "Would you consider retribution or rehabilitation to be the primary concern of the punishment?"); *Powell v. State*, 631 S.W.2d 169, 170 (Tex. Crim. App. [Panel Op.] 1982) (finding the following

---

[5] In an unpublished opinion, this court agreed with *Hunt* and held that a voir dire question about the range of punishment for a lesser-included crime was proper because, even though the defendant elected for the trial court to assess punishment, the defendant and State could agree at a later time to have the jury assess punishment. *Smart v. State*, No. A14-92-00787-CR, 1993 WL 368844, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 1993, pet. ref'd) (mem. op., not designated for publication).

question proper: "[D]o you consider yourself a believer in the theory of deterren[ce], punishment, or rehabilitation?").

In all of the reported decisions we reviewed that addressed the propriety of such philosophical questions, the jury assessed punishment.[6]  But this distinction makes no difference.  Prospective jurors' answers to such philosophical questions may help both parties make intelligent peremptory strikes and could aid decision-making and trial strategy throughout the guilt-innocence portion of the trial.  Further, the objectives of the Penal Code embodied in Section 1.02 — including deterrence, rehabilitation, and punishment — "arguably could be considered relevant to the disposition of any criminal case."  *Cane v. State*, 698 S.W.2d 138, 140 (Tex. Crim. App. 1985) (holding that a trial court would not abuse its discretion by submitting a charge that included all of the objectives of the Penal Code identified in Section 1.02); *see also Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) (reasoning that the State could inquire of each venire member about whether punishment, deterrence, or rehabilitation was the more important goal of the criminal justice system because these objectives are enumerated in the Penal Code).[7]

---

[6] The Austin Court of Appeals issued an unpublished decision finding "no harmful error" when the trial court allowed the State to question jurors about their attitudes toward punishment even though the defendant had elected for the court to assess punishment. *Burk v. State*, No. 03-99-00105-CR, 1999 WL 1023914, at *4 (Tex. App.—Austin Nov. 12, 1999, no pet.) (mem. op., not designated for publication).  The court of appeals stressed that the State's questions did not provoke any improper speculation into the defendant's criminal background, as had been done in *Johnson*. *Id.* (citing *Johnson*, 766 S.W.2d at 560).  The court also emphasized that there was no "unfair advantage" to the State from asking the question because it could help both sides determine whether they wanted to move to strike jurors or elect to have the jury assess punishment. *Id.*  Finally, there was no indication in the record that the State used the juror's responses to strike jurors who favored rehabilitation over revenge. *See id.*

[7] Section 1.02 provides in part:

[T]he provisions of this code are intended, and shall be construed, to achieve the following objections:

(1)    to insure the public safety through:

(A)    the ***deterrent*** influence of the penalties hereinafter provided;

10

The State's question in this case was not "clearly improper." Indeed, the Court of Criminal Appeals has approved such philosophical questions. Thus, the trial court did not abuse its discretion when it allowed the State to ask prospective jurors whether they felt rehabilitation or punishment was more important.

Appellant's first issue is overruled.

## MOTION TO SUPPRESS

In his second issue, appellant argues that the trial court erred by denying his motion to suppress the pistol appellant used during the offense because there was no evidence to support the police officer's reason for stopping appellant, and the officer lacked reasonable suspicion or probable cause to believe appellant was committing an offense or engaging in suspicious activity. The State responds that the officer had probable cause to make an arrest based on appellant's violation of a provision of the Transportation Code.[8]

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor of witnesses, but we review *de*

---

    (B)   the ***rehabilitation*** of those convicted of violations of this code; and

    (C)   such ***punishment*** as may be necessary to prevent likely recurrence of criminal behavior;

Tex. Penal Code Ann. § 1.02(1) (Vernon 2011) (emphasis added).

[8] The trial court stated, "Court finds that the officer had probable cause to make an arrest and that it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the suspect." For purposes of this appeal, we assume without deciding that appellant was arrested — rather than merely detained — at the time Officer Ruiz conducted the search and discovered the pistol. *But see State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008) (noting distinction between arrest and detention).

11

*novo* the court's application of the law to the facts. *Id.* at 25. We view the evidence presented on a motion to suppress in the light most favorable to the trial court's ruling. *Id.* at 24.

A police officer may arrest a suspect without a warrant if the State shows that the officer had probable cause and statutory authority to make the arrest. *Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006). An officer has probable cause to arrest a suspect when the totality of the circumstances within the officer's knowledge would allow a prudent person to believe that the suspect had committed or was committing an offense. *Id.* An officer has statutory authority to make an arrest when the officer observes a suspect committing a criminal offense. *See id.* at 596 n.9; *see also* Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005) ("A peace officer may arrest an offender without warrant for any offense committed in his presence or within his view."); Tex. Transp. Code Ann. § 543.001 (Vernon 2011) ("Any peace officer may arrest without a warrant a person found committing a violation of this subtitle."). *See generally Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (defendant's arrest for violating Texas Transportation Code seatbelt law was valid under Fourth Amendment).

Here, Officer Ruiz arrested appellant because he believed appellant was walking on the wrong side of the street when a sidewalk was present. Section 552.006 of the Transportation Code provides in relevant part:

(a) A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian.
(b) If a sidewalk is not provided, a pedestrian walking along and on a highway shall if possible walk on:
(1) the left side of the roadway; or
(2) the shoulder of the highway facing oncoming traffic.

Tex. Transp. Code Ann. § 552.006. Appellant contends, "The evidence presented to the trial court during the motion to suppress hearing failed to establish whether any of the prescribed violations took place." This argument overstates the State's burden. "[P]roof

12

of the actual commission of the offense is not a requisite." *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977); *accord Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Rather, the State need only show that the officer had probable cause to believe the suspect committed an offence. *Valencia*, 820 S.W.2d at 400. All that is required, therefore, are "specific facts within the presence or view of an officer for him to reasonably conclude therefrom that an offense is being committed in his presence or within his view." *Drago*, 553 S.W.2d at 377.

Officer Ruiz testified that he observed appellant "walking on the wrong side of the street." He testified that the street had a sidewalk, but "some portions of it are obscured." When the State asked if appellant was "walking on a portion where there is a sidewalk or was he walking where the sidewalk is obscured," Ruiz answered, "He was walking where the — there is a portion of the sidewalk." Thus, Ruiz's testimony established that he had specific facts to believe he observed appellant commit an offense: (1) appellant was walking along a roadway; (2) there was an adjacent sidewalk provided; and (3) the portion of the sidewalk adjacent to appellant was accessible.

Appellant contends there is "an issue as to whether [the sidewalk] was 'accessible to the pedestrian'" because the State and appellant introduced pictures of the roadway showing that portions of the sidewalk were obstructed, and Ruiz acknowledged the obstructions. We must defer to the trial court's implied finding that the portion of the sidewalk near appellant was not obstructed when Ruiz observed appellant walking in the street. Thus, Ruiz had probable cause to make an arrest.

Even if we assume for argument's sake that Ruiz could not reasonably conclude that the sidewalk was accessible to appellant, Ruiz's testimony established that he had probable cause to arrest appellant for violating subsection (b) of the statute. Ruiz testified that appellant was "walking on the wrong side of the street" and that the Transportation Code requires a person to "walk facing traffic." A reasonable fact finder

could infer from this testimony that appellant was not facing oncoming traffic or walking on the left side of the street.[9]

Accordingly, the trial court correctly denied appellant's motion to suppress. Appellant's second issue is overruled.

## JURY CHARGE

In his fourth issue, appellant argues that the trial court erred by not charging the jury on the issue of self defense. The State contends the evidence did not warrant a self defense instruction because "there is no evidence in the record to establish that appellant's use of the deadly weapon was immediately necessary to protect himself from Mr. Hines's use of unlawful deadly force."[10]

If a defense is supported by the evidence, then the trial court must instruct the jury on that defense regardless of the strength or credibility of the evidence. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007); *see* Tex. Penal Code Ann. § 2.03(c) (Vernon 2011). A defense is supported by the evidence if there is some evidence from any source on each element of the defense that, if believed by the jury, would support a rational inference that the element is true. *Shaw*, 243 S.W.3d at 657–58. We view the evidence in the light most favorable to the defendant. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw*, 243 S.W.3d at 658.

---

[9] Appellant argues that subsection (b) could not apply to appellant because a sidewalk was indeed "provided." He contends "the only issue is whether it was accessible." But even if appellant was not actually violating the statute, Ruiz could still have probable cause to make an arrest. *See Drago*, 553 S.W.2d at 377 (officer had probable cause for a traffic stop even though the traffic signs in question could have been unconstitutionally vague and would not have afforded the defendant due process in a prosecution for violating the traffic law itself).

[10] The State also contends that a jury instruction was unwarranted because appellant (1) was carrying a weapon in violation of Section 46.02 of the Penal Code; (2) provoked the disturbance as a matter of law; and (3) was committing a criminal trespass. We do not address these arguments because it would be unnecessary for the disposition of this appeal. *See* Tex. R. App. P. 47.1.

14

As applied in this case, appellant would be justified in making a threat of deadly force against Hines (1) if appellant was justified in using force under Section 9.31 of the Penal Code;[11] and (2) when and to the degree appellant reasonably believed deadly force was immediately necessary to protect himself against Hines's use or attempted use of unlawful deadly force. *See* Tex. Penal Code Ann. § 9.32(a) (Vernon 2011); *see also* Tex. Penal Code Ann. § 9.04 (Vernon 2011) ("The threat of force is justified when the use of force is justified by this chapter."). "Reasonable belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as appellant. *See* Tex. Penal Code Ann. § 1.07 (Vernon 2011).

Appellant suggests the "critical factor for this Court to consider here is the admission by the complainant in this case that he threatened Appellant with a deadly weapon." Appellant suggests we should not consider whether he retreated to determine if he reasonably believed deadly force was immediately necessary. A 2007 amendment to Section 9.32 repealed the previously required element that "a reasonable person in the actor's situation would not have retreated." Act of March 20, 2007, 80th Leg., R.S., ch. 1, § 3, 2007 Tex. Gen. Laws 1; *see also Morales v. State*, No. PD-1155-10, __ S.W.3d __ 2011 WL 5375133, at *2–3 (Tex. Crim. App. Nov. 9, 2011). The statute now provides:

> (c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.
>
> (d) For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

---

[11] Section 9.31(b) provides a list of exceptions for when the use of force against another is not justified. *See* Tex. Penal Code Ann. § 9.31(b) (Vernon 2011).

15

Tex. Penal Code Ann. § 9.32(c)–(d).[12]

Undisputed evidence in the record shows that Hines put his hand on a steel banding machine and threatened to hit appellant while both were standing in the warehouse. But after Hines made this threat, both parties retreated from the disturbance. Hines went back to his office and began talking on a radio to some drivers. Appellant went to his car. Only after both parties retreated did appellant return to the building, open the door to the office, and threaten Hines with deadly force.

Regardless of whether appellant presented some evidence addressing the requirements of subsection (c), we need not consider whether appellant "failed to retreat" in this case. Appellant and Hines both retreated. Therefore, the threat from Hines had ceased by the time appellant returned to the building from his car and entered Hines's office with a gun.

Appellant retreated from the disturbance in the warehouse, went to his car, obtained a gun, and reappeared at a different location on the company's premises to escalate the disturbance at a time when he was under no threat of violence from Hines. No reasonable person would have believed that deadly force was immediately necessary to protect himself from Hines at the time appellant reappeared in Hines's office and threatened Hines with deadly force. *See Davis v. State*, 22 S.W.3d 638, 640 (Tex. App.—Waco 2000, pet. ref'd) (defendant could not have reasonably believed force was immediately necessary; after the complainant first tried to hit the defendant, the defendant walked away, left the room, got a knife, and returned to threaten the complainant); *Reece v. State*, 683 S.W.2d 873, 874 (Tex. App.—Houston [14th Dist.] 1984, no pet.) (defendant could not have reasonably believed deadly force was immediately necessary under circumstances in which the complainant struck the defendant in the back of the head, kicked the defendant while the defendant was on the

---

[12] Subsection (a)(2) requires that the person using deadly force must reasonably believe that deadly force is immediately necessary. Tex. Penal Code. Ann. § 9.32(a)(2).

16

ground, said he was going to get his .357 Magnum and "waste" the defendant, and walked away; defendant then pulled a shotgun from his car, told the complainant to "hold it," and shot the complainant as the complainant was approaching the defendant); *Bray v. State*, 634 S.W.2d 370, 371–73 (Tex. App.—Dallas 1982, no pet.) (defendant was not entitled to charge on self defense in part because the complainant did not threaten deadly force; the complainant had struck the defendant with a stick earlier in the day and had walked by the defendant's house); *see also Hardin v. State*, 104 Tex. Crim. 178, 181, 283 S.W. 517, 518 (1926) ("[I]f it reasonably appeared to [the defendant] that his adversary had in good faith abandoned the difficulty, he could not further pursue and shoot said adversary.").

Appellant's fourth issue is overruled.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/      William J. Boyce
         Justice


Panel consists of Justices Brown, Boyce, and McCally.

Publish — Tex. R. App. P. 47.2(b).