# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10841

United States Court of Appeals
Fifth Circuit

**FILED**
July 23, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DARRELL DEWAYNE LUCKY,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-124

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

Darrell Dewayne Lucky was convicted by his plea of guilty of possessing a firearm while being a convicted felon. He reserved the right to appeal the district court's denial of his motion to suppress a gun Dallas police recovered from the scene of his arrest. In this connection, Lucky argues that he was unlawfully seized under the Fourth Amendment and that the recovered gun was the fruit of that unlawful seizure. Because Lucky was violating a well-established Texas traffic ordinance when officers first approached him, the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

officers were entitled lawfully to detain him under the Fourth Amendment and the district court did not err by denying his motion to suppress. The judgment of the district court is AFFIRMED.

I.

On December 29, 2011, two Dallas police officers were patrolling a high crime area around midnight. Officer Cooley and his partner, Officer Nielson, were in a marked patrol car driving down a residential street when they noticed Lucky and another male walking in the middle of the street toward the officers. Because the officers observed accessible sidewalks on both sides of the street Lucky was walking on, they noted that he was violating TEX. TRANSP. CODE ANN. § 552.006, which forbids pedestrians from "walk[ing] along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian." Intending to either cite or arrest Lucky for the offense, Cooley began to get out of his patrol car. As Cooley exited the vehicle, Lucky moved behind the trunk of an adjacent parked car, attempting to block the officers' view of him. At the same time officers observed Lucky making an "exaggerated pulling motion" with his right arm as if he was attempting to retrieve something from his pocket. Cooley immediately drew his weapon and ordered Lucky to show his hands. At about that time Cooley heard a soft thud as Lucky threw an object into the grass of the closest residential yard. Cooley subsequently ordered both Lucky and the other man to the ground; Cooley placed Lucky in handcuffs while Nielson dealt with Lucky's companion.

After placing Lucky in handcuffs, Cooley walked over to the tossed object and discovered that it was a very small, fully loaded, silver .22 caliber revolver. Although it was a chilly night, the gun was warm; furthermore, in spite of ample dew on the ground, the gun was dry. A background check of Lucky showed him to be a convicted felon and he was arrested. Lucky was charged with a being a convicted felon in possession of a firearm, a violation of 18 U.S.C.

No. 13-10841

§ 922(g)(1).  Before trial, Lucky filed a motion to suppress the gun, alleging that the officers had unreasonably seized him in violation of the Fourth Amendment.  He disputed the officers' version of events and argued that he was only standing in the middle of the street and that the officers never saw him throw anything.  He stated that the officers simply encountered him on the street in their patrol car, immediately drew their guns, and demanded that he show his hands.  According to Lucky, the officers lacked the requisite suspicion necessary to make the officers' stop of him lawful under the Fourth Amendment.

Lucky presented two witnesses to support him and to contradict the officers' testimony.  The district court found that these witnesses were not credible.  Accepting the officers' account of the incident, the district court denied Lucky's motion to suppress.  Specifically, the court found that the officers "had multiple levels of reasonable suspicion" which included the officers "seeing [Lucky] in the street, [in the] middle of the night[,"] Lucky's apparent throwing motion, and the accompanying sound of something landing in the yard.  According to the court, the officers' detention of Lucky was lawful; thus, there was no basis upon which to suppress the gun.  Following the denial of his motion, Lucky pled guilty to the single charge.  The district court subsequently sentenced him to a 60-month term of imprisonment.  Lucky properly filed a notice of appeal based solely upon the district court's denial of his motion to suppress.

## II.

We review the denial of a motion to suppress evidence in two parts.  The factual findings are reviewed for clear error, while conclusions "regarding . . . the constitutionality of law enforcement action [are reviewed] *de novo*."  *United States v. Perez*, 484 F.3d 735, 739 (5th Cir. 2007).  "We view the evidence in the light most favorable to the prevailing party, here the Government."  *United*

3

*States v. Abdo*, 733 F.3d 562, 565 (5th Cir. 2013). From the outset, it is important to note that Lucky does not argue the district court's factual findings were clear error and, as a result, he has effectively waived that argument. *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("[F]ailure to raise an issue on appeal constitutes waiver of that argument."). We thus accept the district court's findings of fact for our review.

Generally, there are three recognized categories of police/citizen encounters in our Fourth Amendment jurisprudence. Here, there is the investigative *Terry* stop, which is considered a seizure for Fourth Amendment purposes. It applies when an officer detains an individual for a limited time to conduct a brief investigation in which the officer does not necessarily have probable cause to believe a crime is committed, but "has reasonable, articulable suspicion that the person has been, or is about to be engaged in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985). Both Lucky and the Government agree that Cooley's detention was an investigative stop under *Terry*. The question, then, is whether the officers had reasonable suspicion at the time of a seizure. We look at the "totality of the circumstances–the whole picture." *United States v. Sokolow*, 490 U.S. 1, 8 (1989). The totality of the circumstances must be such that a reasonable officer would suspect some legal wrongdoing. *United States v. Pack*, 612 F.3d 341, 353–57 (5th Cir. 2010).

We review *Terry* stops under a two-part inquiry. *Id.* at 350. The first question we ask is "whether or not the officer's decision to stop . . . was justified at its *inception*." *Id.* (emphasis added). Even if the stop was justified, the second part of the inquiry requires us to ask "whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that cause[d] him to [make the] stop in the first place." *Id.* There is no reasonable relation if the officer detains the individual "beyond the time necessary to investigate the circumstances that caused the stop, unless he develops

reasonable suspicion of additional criminal activity in the meantime." *Id.* Lucky focuses on the first prong and argues that his initial seizure, *at its inception*, was illegal. With regard to the second prong, Lucky does not argue that the officers detained him for an unreasonable amount of time and consequently that is not an issue in this case. We thus turn to the consideration of whether the initial detention was lawful.

The officers observed Lucky walking down the center of a street that had accessible sidewalks; this was a violation of Texas law. *See* TEX. TRANSP. CODE ANN. § 552.006 ("A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian."). Not only did Cooley have reasonable suspicion to stop Lucky, but under Texas law, he had a basis to make an arrest if he chose to do so. *See McBride v. State*, 359 S.W.3d 683 (Tex. App.–Houston 2011) (reaffirming that an officer may arrest without a warrant an individual found violating this particular subsection of the Texas Transportation Code); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001) (acknowledging that a probable cause standard applies to all offenses, even minor ones such as a violation of this particular subsection of the Texas Transportation Code). The stop of Lucky, at its inception, was reasonable under the Fourth Amendment because the officer had "reasonable, articulable suspicion" that Lucky was "engaged in criminal activity." *Hensley*, 469 U.S. at 227. Cooley lawfully stopped Lucky when he observed him breaking Texas law. There is no basis upon which to suppress the discarded gun and, therefore, the district court did not err when it denied Lucky's motion to suppress. Accordingly, the judgment of the district court is

AFFIRMED.