**Opinion issued March 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00550-CR

———————————

**THOMAS M. WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 186th District Court**
**Bexar County, Texas[1]**
**Trial Court Case No. 2013-CR-8062**

---

[1] The Supreme Court of Texas, pursuant to its docket equalization authority, transferred the appeal to this Court. *See* Misc. Docket No. 14–9121 (Tex. Jun. 23, 2014); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer).

**MEMORANDUM OPINION**

Appellant, Thomas M. Wilson, pleaded guilty to the offense of possession of a controlled substance, namely cocaine, weighing between one and four grams.[2] The trial court assessed his punishment at confinement for three years, suspended his sentence, placed him on community supervision for three years, and assessed a fine of $2,000. In his sole issue, appellant contends that the trial court erred in denying his motion to suppress evidence.

We affirm.

## Background

At a hearing on appellant's motion to suppress evidence, San Antonio Police Department ("SAPD") Officer R. Casiano testified that on July 12, 2013, he was assigned to a problem-oriented police unit ("POP unit")[3] on the east side of the city because of a high level of gang violence and numerous shootings having occurred in the area. At approximately 12:50 a.m., Casiano and his partner, Officer J. Hogard, while on patrol in a marked car at the intersection of Blue Bonnet Street and Lockhart Street, saw "two individuals," later identified as appellant and William Caldwell, walking down the street. And Casiano added that "[i]t was dark and that type of area, . . . we were just contacting anybody that was out—out and

---

[2]    *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (c) (Vernon 2010).

[3]    Officer Casiano explained that a POP unit is assigned to patrol "specific areas in the city that have problems such as drug activity, gang activity, [or] prostitution."

2

about that was . . . doing anything that was pretty much reason to stop [sic]." He explained that walking in the street where there is an accessible sidewalk constitutes a violation of law.

After the officers directed a spotlight onto the two men and they turned around, Officer Casiano saw that each was holding an open "40-ounce bottle of beer" and "consuming alcohol." Casiano explained that although one may not legally consume alcohol in certain parts of the city, such consumption did not constitute a violation of law in the immediate area. He noted that given the size of the bottles, however, the men could possibly have been "publicly intoxicated."

Officers Casiano and Hogard then got out of their patrol car and asked the men to "come over" and talk with them. When Hogard asked Caldwell for his identification, Caldwell complied and mentioned that he "may have ticket warrants." Casiano stayed with Caldwell and appellant while Hogard went to the patrol car to check Caldwell's identification against a law enforcement database. When he returned, Hogard explained to Caldwell that there were two outstanding warrants for his arrest, and he placed Caldwell in handcuffs.

Officer Casiano then asked appellant whether "he had his [identification] and if he had any weapons or anything on him that [the officers] should know about." And appellant replied that "[h]e didn't have anything." Casiano further testified as follows:

3

[State]:     He told you he didn't have any identification or any weapons?

[Casiano]:   He just said he didn't have anything—didn't have anything.

[State]:     Okay. Now, at this point, was [appellant] under arrest?

[Casiano]:   No. He was just being detained for walking on the roadway where a sidewalk was provided.

. . . .

[State]:     So he told you that he was not armed. Up to this point in your investigation, was there any particular concern that you had, though, that he may in fact be armed?

[Casiano]:   Just his overall demeanor. He appeared—well, most people that we contact, they have, you know, a reasonable level of nervousness. [Appellant] was extremely calm.

. . . .

             I don't want to say overly calm—but he had absolutely no level of nervousness at all which was a little odd to me based off all the stops that I've ever done in that area. And most people that I have contacted with that type of demeanor were hiding something and were trying to be too calm to not raise any suspicion or anything like that.

. . . .

             Given the time and location that we were in, it's a fairly high crime area. It's hours of darkness and typically, you know, two males walking down the street at that period of time if it's not an area, you know, where people walk around in the street unless they're, you know, intoxicated or, you know, traveling somewhere. But, you know, normally down the sidewalk or in their house [sic]. So I made contact with him by the fact that they were just walking on the street. Just basically, you know, detained them for that reason.

[State]:     And what about the consumption of alcohol? Was that another factor that played into your mind?

4

[Casiano]: Once we started—once we actually approached them and saw the alcohol, that—that would be the reason for, you know—that amount that was a 40–ounce bottle almost gone, . . . make you believe that he may be intoxicated in public.

[State]: Okay. And were you, in fact, at that time concerned for you and your partner's potential safety that he may have weapons?

[Casiano]: Yes, sir.

[State]: And did you conduct a protective frisk of the defendant based on those fears?

[Casiano]: Yes.

[State]: Okay. And can you tell me what happened then when you did the protective frisk?

[Casiano]: I asked him if he had anything sharp, any weapons on him and he said, no. I reached for his waist, felt a gun in his waist, [and] asked him what it was. He said it was his [piece], referring to it being a gun. I asked him, you know—I told him, well, I asked you earlier if you had any weapons and you said no. And I just detained him, placed him in handcuffs.

After determining that appellant did not have a concealed handgun license, Officer Casiano arrested him for unlawfully carrying a firearm. And in a search conducted incident to the arrest, Casiano found cocaine in appellant's wallet and a "couple of crack rocks" in his front pocket. Casiano identified appellant's firearm as a "9–millimeter" and noted that it was loaded.

On cross-examination, Casiano testified, seemingly inconsistently, that at the time that Officer Hogard was in the patrol car checking Caldwell's identification

5

information against the law enforcement database, he also checked appellant's identification.

Caldwell testified that on the night of July 12, 2013, he and appellant decided to walk to a store. They had been walking on the sidewalk "all the way" and were crossing Blue Bonnet Street when the police officers pulled up behind them in their patrol car with its spotlight shining on them. The officers then "jumped out of the car" and "start[ed] patting [them] down." The driver, Officer Hogard, patted Caldwell down and then asked for identification. Caldwell admitted that when the officers patted him down, they found crack cocaine on his person. He noted that he could not see what was happening with appellant. At the point that Hogard was checking his identification, however, Officer Casiano had already located appellant's firearm. And Caldwell asserted that only appellant had been carrying a bottle of beer.

The trial court denied appellant's motion to suppress, explaining:

> I'm gonna find that Officer Casiano's testimony is credible. According to his testimony, they were walking in the street where a sidewalk is provided. I think that gives him reason to stop and investigate. He sees a beer in his hand, while that alone is not against the law, the combination of those things are concerning, the time of night, the high crime area, and demeanor of the defendant.

> And, yes, I mean, it might sound unique to say he was too calm. But I'm not gonna question Officer Casiano's experience while he is out there in the street, in the dark at night, in a high crime area—if he senses that he is too calm, he can go with his gut and check for his safety. And so I don't see any problems with the search. I'm gonna deny the Motion to Suppress.

Following the trial court's ruling, appellant pleaded guilty to the offense of possession of a controlled substance.

## Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo." *Id.* We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, the trial court makes findings of fact, we determine whether the evidence,

7

when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

**Motion to Suppress Evidence**

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress the narcotics seized from him because, under the United States Constitution, the initial frisk that led to the discovery of his firearm was not justified. *See* U.S. CONST. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968).

"A 'stop' and 'frisk' by law enforcement personnel amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing *Terry*, 392 U.S. at 16, 88 S. Ct. at 1877). Under an exception to the Fourth Amendment's warrant requirement, however, an officer may generally be justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly[]criminal behavior." *Id.* (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas

8

courts require reasonable suspicion before a seizure of the person or property can occur.")).

To determine the reasonableness of an investigative detention, we consider whether the officer's action was (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference. *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *Davis*, 947 S.W.2d at 242. Under the first prong, an officer is generally justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly [] criminal behavior" where the officer has "specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Carmouche*, 10 S.W.3d at 328. Reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity. *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880. The officer must have had an objective basis for the stop; the officer's subjective intent is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We look only to the facts known to the officer at the inception of the stop; an initially unlawful stop is not validated by a subsequent discovery of criminal activity. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415 (1963).

Under the second prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947

S.W.2d at 245. The reasonableness of the detention depends on whether law enforcement officers diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.* The same standards apply whether a law enforcement officer detains a pedestrian or an occupant of an automobile. *Carmouche*, 10 S.W.3d at 328. For instance, in a routine traffic stop, an officer may request identification information from the detainee and conduct a computer check on the information. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004). And the investigation is not complete until such check is completed and the officer confirms that the person has no outstanding warrants. *Id.* Once the purpose of the initial stop has been effectuated, however, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsberg, J., concurring)).

A law enforcement officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons, even in the absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *Davis*, 829 S.W.2d at 220. However, "[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence." *Carmouche*, 10

10

S.W.3d at 329 (quoting *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). A pat-down search is not justified on the basis that a law enforcement officer has a "reasonable suspicion to believe that a detainee is involved in criminal activity." *Id.* (distinguishing legal standard justifying initial detention from legal authority to conduct "frisk"). "The 'exigencies' that permit the additional search are generated strictly by a concern for the safety of the officers." *Id.* (citing *Terry*, 392 U.S. at 25–26, 88 S. Ct. at 1882). And the "additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.* (citing *Terry*, 392 U.S. at 25–27, 88 S. Ct. at 1882–83; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991)).

Here, Officer Casiano testified that he initially detained appellant because he observed him walking in the middle of a street that had accessible sidewalks. "A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian." TEX. TRANSP. CODE ANN. § 552.006 (Vernon 2011). A violation of section 552.006 constitutes a misdemeanor offense. *See id.* § 542.301(b). And an officer may, without a warrant, arrest a person found committing a violation of section 552.006. *See id.* § 543.001. Moreover, an arrest for a minor violation of the Texas Transportation Code does not constitute an unreasonable seizure under the Fourth Amendment. *See Atwater v. City of Lago*

11

*Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1558 (2001); *State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005).

Officer Casiano's testimony established that he had specific, articulable facts establishing his belief that appellant had commited an offense: (1) appellant was walking along a roadway; (2) an adjacent sidewalk was provided; and (3) the portion of the sidewalk adjacent to appellant was accessible. *See McBride v. State*, 359 S.W.3d 683, 692–93 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding testimony established officer had belief, based on specific facts, defendant had committed pedestrian traffic offense). And not only did Casiano have reasonable suspicion to stop appellant, but he had a basis to make an arrest had he chosen to do so. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); *McBride*, 359 S.W.3d at 692 (holding officer had probable cause to make warrantless arrest when he observed defendant violating Transportation Code section 552.006).

Appellant notes that Caldwell testified that he and appellant were actually walking on the sidewalk when the officers approached them in their patrol car. At a suppression hearing, however, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *See Maxwell*, 73 S.W.3d at 281; *Ross*, 32

12

S.W.3d at 855. Here, the trial court chose to disbelieve Caldwell's testimony that he and appellant were on the sidewalk and to believe Officer Casiano's testimony that he and appellant were walking in the street. *See McBride*, 359 S.W.3d at 693.

The trial court could have reasonably concluded that Officer Casiano's detention of appellant was, at its inception, reasonable under the Fourth Amendment because Casiano had "reasonable, articulable suspicion" that appellant was "engaged in criminal activity." *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *Davis*, 947 S.W.2d at 242; *see also United States v. Lucky*, 576 F. App'x 314, 316–17 (5th Cir. 2014) (holding detention of defendant after officer observed him violating section 552.006 reasonable under Fourth Amendment).

Appellant further argues that, even if the initial stop was justified, Officer Casiano was not justified in performing a protective frisk because he was "without specific and articulable facts in which a reasonable person would justifiably believe that [he] or others were in danger."

We need not assess whether Officer Casiano was justified in performing a protective frisk under *Terry*, however, because the record reveals that Casiano actually had probable cause to arrest appellant and could, therefore, legally conduct a search incident to a lawful arrest. *See McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003); *Williams v. State*, 726 S.W.2d 99, 100 (Tex. Crim. App.

1986) (declining to address issue of whether officer justified in making protective search for weapons where officer had probable cause to arrest).

Probable cause for an arrest exists when facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has committed or is committing a crime. *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999). Once an officer has probable cause to arrest, he may lawfully conduct a search incident to that arrest. *Williams*, 726 S.W.2d at 101.

In *Williams*, an officer approached a truck parked on the wrong side of a street, where the officer suspected that a drug transaction was occurring. *Id*. at 99. The officer saw the defendant make a downward motion inside the truck, then saw a bag on the floor of the truck, reached inside and looked in the bag, and found a gun in the bag. *Id.* at 99–100. And the officer arrested the defendant. *Id*. at 99. At the hearing on the defendant's motion to suppress, the officer testified that he had reached into the truck to search for "[t]wo reasons. Narcotics and for [his] safety." *Id*. at 100. The Texas Court of Criminal Appeals upheld the search as a valid search incident to arrest because prior to the search, the officer had probable cause to arrest the defendant for the offense of illegal parking. *Id*. at 100–01.

In *Ballard*, the court of criminal appeals explained:

14

[A] search conducted prior to the establishment of probable cause could never be considered valid. An officer could stop a vehicle for any reason or no reason, search its passenger compartment and then arrest the occupants based on whatever evidence is found in the search. The Fourth Amendment was enacted to protect citizens from precisely this type of unreasonable search. The actual issue . . . is whether or not the trial court properly determined the existence of probable cause to arrest [the defendant] prior to the search.

987 S.W.2d at 892 (internal citation omitted). "It is irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search." *Id.* (citations omitted). And an otherwise valid search incident to arrest will be upheld, even if the initial offense is not the actual reason for the officer's arrest. *See State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005).

Here, once Officer Casiano observed appellant's commission of the Transportation Code offense, he had probable cause to arrest appellant. *See McBride*, 359 S.W.3d at 692. Thus, Casiano's subsequent search of appellant is valid as a search incident to arrest. *See Ballard*, 987 S.W.2d at 892–93; *Willams*, 726 S.W.2d at 101. Although appellant asserts that he was not yet under arrest at the time of Casiano's initial search, the law requires only that probable cause to arrest precede a search. *See Ballard*, 987 S.W.2d at 892–93. Although Casiano chose not to arrest appellant for the Transportation Code violation, but for the offenses of unlawfully carrying a weapon and possessing a controlled substance, which he discovered during the search, he actually had probable cause to arrest

15

appellant for an offense prior to the search. *See Williams*, 726 S.W.2d at 101 (holding search of defendant's person valid because arresting officer had probable cause to arrest defendant for previously observed parking violation); *State v. Morales*, 322 S.W.3d 297, 299–300 (Tex. App.—Dallas 2010, no pet.) (upholding search yielding narcotics paraphernalia based on previously obtained probable cause to arrest defendant for Transportation Code violations). Casiano's choice not to arrest appellant for the Transportation Code violation does not negate the fact that he had probable cause to arrest him at the time of the search. *See, e.g.*, *State v. George*, 2013 WL 2286083, at *5 n.2 (Tex. App.—Tyler May 22, 2013, no pet.) (mem. op., not designated for publication).

Further, although Officer Casiano, in his testimony at the hearing, suggested that he "went with his gut" in deciding to search appellant, his subjective intent is irrelevant to our analysis. *See Garcia*, 43 S.W.3d at 530. That he may have had another subjective motive for seizing appellant would not have made an objectively reasonable seizure unlawful under the constitutions of the United States or of this state. *See Gray*, 158 S.W.3d at 469–70 (citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996); *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995)); *see, e.g.*, *Smith v. State*, No. 01-11-00445-CR, 2012 WL 2236628, at *2 (Tex. App.—Houston [1st Dist.] June 14, 2012, no pet.) (mem. op, not designated for publication) (holding regardless of officer's subjective

motivation for stopping defendant, officer's observation of defendant's commission of traffic offenses provided lawful basis to conduct search incident to arrest). Again, we may uphold a trial court's ruling on any theory of law applicable to a case and on a ground not articulated by the officer in his testimony. *Ross*, 32 S.W.3d at 855–56; *Williams*, 726 S.W.2d at 100–01.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).