**Opinion issued May 13, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00721-CR**

———————————

**JOSE ALBERTO RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1764015**

---

## O P I N I O N

A jury found appellant, Jose Alberto Rodriguez, guilty of the felony offense of indecency with a child,[1] and the trial court assessed his punishment at confinement for fifteen years and a fine of $100. In five issues, appellant contends

---

[1]     *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (d).

that the evidence is legally insufficient to support his conviction and the trial court erred in instructing the jury, admitting certain evidence, allowing the State to impeach a defense witness, and assessing a fine against appellant.

We modify the trial court's judgment and affirm as modified.

## Background

The complainant, S.C., testified that she was thirteen years old and lived with her maternal grandmother, Soledad Lopez ("Soledad"). She felt safe living with her grandmother. The complainant's mother and father were no longer in a relationship.[2] The complainant had four siblings, L.G., M.R., M.R., and A.R. The complainant and L.G. had the same biological father, but appellant was the father of M.R., M.R., and A.R. The complainant's mother started dating appellant when the complainant was about five or six years old. When appellant first moved into the complainant's home, she and L.G. were the only children in the home.

While the complainant lived with her mother and appellant, appellant worked, but her mother did not. Appellant did most of the cleaning and cooking, but the complainant was sometimes expected to do things like that. She had to change her siblings' diapers and feed them because her mother would be in her bedroom. The complainant's mother did not always get up in the morning to make sure that the children went to school.

---

[2] According to the complainant, her parents' relationship ended when she was about two years old.

2

At one point during her childhood, the complainant lived in a two-bedroom apartment with her mother, her siblings, and appellant. The complainant and L.G. shared a bedroom with a bunkbed. The complainant slept on the bottom bunk, and L.G. slept on the top bunk. The complainant's mother and appellant slept in another bedroom along with the complainant's other siblings. For a while, the complainant's aunt, Lucero Lopez ("Lucero"), also lived with the complainant's family in the apartment.

When the complainant was about nine years old, her family moved into a trailer home in Humble, Harris County, Texas. This home was across the street from Soledad's home. The complainant shared a bedroom with L.G., and they again shared a bunkbed. L.G. slept on the top bunk, and the complainant slept on the bottom bunk. While living in the trailer home, the complainant attended school online due to the COVID-19 pandemic.[3] Lucero would get the complainant up each morning so that she could log into her classes on the computer, and Lucero helped the complainant with her homework. The complainant's mother would be asleep while Lucero was helping the complainant.

On the night of January 31, 2021, the complainant, who was ten years old at the time, slept in her bedroom with L.G. L.G. had wanted to sleep on the bottom bunk with the complainant, but appellant told her to go sleep on her top bunk.

---

[3] *See generally Kim v. Ramos*, 632 S.W.3d 258, 261 n.5, 266 n.13 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (discussing COVID-19 pandemic).

Appellant then laid down on the complainant's bottom bunk next to her and stayed in bed with her for a short time. While lying there, appellant told the complainant to give him a kiss on his lips, but she did not do so. Appellant left the complainant's bedroom after the complainant's mother called for him.

On February 1, 2021, Lucero came to the complainant's home to help her with her schoolwork. Lucero asked the complainant "why [she] was so tired," and the complainant told her that she could not sleep. The complainant then told Lucero "the situation and what was going on." She told Lucero that appellant "had started touching her." Lucero and the complainant went across the street to tell Soledad, who became angry. Soledad brought the complainant back to the trailer home, and the complainant told her mother. Law enforcement officers were called. A few days later, the complainant began living with Soledad.

The complainant further testified that appellant would often come and lie in her bed with her because he and the complainant's mother argued a lot. When appellant would get in the complainant's bed, he would lay the complainant on top of him, "chest to chest." Appellant would "put his hands down [her] pants and grab [her] from [her] butt," "[u]nder her underwear." Appellant had his clothes on, but he would move her body. The complainant could feel that appellant's penis was hard. This occurred while the complainant was living in the trailer home in Humble.

4

The complainant also testified that "the first time that [appellant] touched [her] inappropriately" happened when she was about seven years old in a guest house behind her great-grandmother's home. The complainant was in the bathroom, wearing underwear, when appellant came in and sat on the toilet. Appellant sat the complainant on his lap and "grabbed [her] thigh," "kind of [going] upwards from there." Appellant only touched her thigh, but she felt uncomfortable. He told the complainant not to say anything. At the time, the complainant's mother was sleeping in her bedroom.

Further, when the complainant was about eight years old,[4] appellant touched her again at the guest house behind her great-grandmother's home. The complainant was lying down on her stomach in the living room, and appellant touched her vagina and "butt" over her clothes. Appellant also put one of his fingers inside her vagina. The complainant's mother and siblings were asleep at the time. The complainant felt uncomfortable.

Finally, the complainant explained that appellant had never asked her to touch his body. No person other than appellant ever touched her inappropriately. According to the complainant, her relationship with her mother had suffered

---

[4] The complainant noted that she started wearing a bra at eight years old. Appellant would tell the complainant that she could not wear certain things, like shorts or dresses, in public.

because of what happened with appellant, and she did not like thinking about what had happened.

Lucero testified that the complainant was her niece. Lucero was twelve years old when the complainant was born, and Lucero considered the complainant to be her little sister. Lucero was also close to the complainant's siblings, L.G., M.R., M.R., and A.R.

When the complainant was about six or seven years old, she was a happy child, but she did not have a close relationship with her mother. At some point, around 2013, the relationship between the complainant's mother and the complainant's father ended, and the complainant's mother began a relationship with appellant. Lucero had concerns about appellant and felt that appellant "might not be ideal to be in the same living environment" as the complainant. Lucero told the complainant's mother about her concerns, but they went unaddressed. Lucero noted that she did not often talk to appellant.

At some point, when Lucero was a freshman in college, she lived with the complainant's family in a two-bedroom apartment. Lucero shared a bedroom with the complainant and the complainant's sister, L.G., and the other children slept in a bedroom with appellant and the complainant's mother. While Lucero lived with the complainant, she noticed that the complainant was nervous around appellant,

and she spoke to the complainant about it. At the time, the complainant's mother was "[a]bsent" from the home.

On February 1, 2021, Lucero went to the complainant's home "to ensure that [the complainant] was logging in to her Zoom [school] classes"[5] and "to assist [her] with homework." Lucero regularly did this with the complainant and L.G. Appellant was at the home that morning but left for work. Lucero found the complainant in her bedroom, and she looked tired and like she had not slept. Lucero had a conversation with the complainant and noticed that her demeanor appeared "[d]istressed and upset," and Lucero asked the complainant why she was so tired. After speaking with the complainant, Lucero took the complainant across the street to her mother's home. The complainant was "really scared." Lucero told her mother, Soledad, what she had learned from the complainant, and Soledad became angry. Soledad went to speak to the complainant's mother, and Lucero stayed with the complainant at Soledad's home.

After Soledad returned, law enforcement officers were called, and they interviewed "everyone individually." The complainant and L.G. were then removed from the complainant's mother's home and placed in Soledad's home. The complainant appeared "[m]ore calm." Throughout the pendency of the case,

---

[5]     *See United States v. Sheppard*, Criminal Action No. 5:17-CR-00026-TBR, 2020 WL 6534326, at *1 (W.D. Ky. Nov. 5, 2020) (mem. op. and order) (noting "Zoom" is "a video conferencing platform" that was utilized during COVID-19 pandemic due to safety and health concerns surrounding in-person proceedings).

the complainant continued to live with Soledad. The complainant spoke to her mother "[o]n and off." Lucero described the complainant as sad, angry, and depressed.

Soledad testified that she was the complainant's maternal grandmother and they had a close relationship. The complainant was about five or six years old when her mother and appellant's relationship began. Soledad described the relationship between the complainant's mother and appellant as "more fighting than happiness."

Soledad noted that while appellant was a part of the complainant's life, she did not like the "way he would look at [the complainant]." Appellant did not like how the complainant would dress. The complainant began going through puberty at about nine years old.

On February 1, 2021, Soledad lived in a home in Humble. The complainant, who was ten years old at the time, lived across the street in a trailer home with her mother, her siblings, and appellant. On that day, Lucero and the complainant came to speak to Soledad. The complainant was nervous, scared, and crying. After learning information from the complainant, Soledad went to speak to the complainant's mother. When she arrived at the complainant's home, the complainant's mother was asleep, which was common. The complainant's mother was surprised by what Soledad told her. Soledad then went home and called law

8

enforcement officers, and officers came to the complainant's home. After February 1, 2021, appellant no longer lived at the complainant's home, and the complainant lived with Soledad. The complainant's sister, L.G., came to live with Soledad too; the complainant's mother sent L.G. over to Soledad's home and then never came to pick her back up. About a week after the allegations against appellant arose, the complainant's mother moved out of the trailer home and into a hotel with appellant.

Danitra Fields-Frazier, an investigator with Child Protective Services ("CPS"), testified that on February 1, 2021, a report was made to CPS regarding a sexual assault allegation involving the complainant, and she was assigned to the case. Fields-Frazier went to the complainant's home on February 3, 2021 and spoke to the complainant, her mother, and L.G. The complainant and L.G. also participated in a forensic interview on February 26, 2021. The complainant's forensic interview matched what the complainant told Fields-Frazier on February 3, 2021. After the forensic interview, a Family Based Safety Services plan was put in place by CPS, which required that appellant have no contact with the complainant and L.G., but appellant could have supervised visitation with his biological children, M.R., M.R., and A.R. The complainant and L.G. were placed in the care of Soledad. When Fields-Frazier spoke to the complainant's mother,

9

she did not seem supportive of the complainant, and she did not believe the allegations.

On February 28, 2021, Fields-Frazier visited the complainant's mother at a hotel. The complainant's mother reported that appellant was staying in the room next door to her room at the hotel. However, Fields-Frazier was never able to speak with appellant about the allegations against him. At some point, the complainant's mother and appellant moved to California during the pendency of the investigation. Following her investigation, Fields-Frazier concluded that there was "reason to believe" the complainant's allegations, which meant that CPS believed by a preponderance of the evidence that sexual abuse had occurred. (Internal quotations omitted.)

Dr. Ashley Gibson testified that she conducted the complainant's sexual assault examination on March 17, 2021.[6] The complainant was born in 2010, and she was eleven years old at the time of the examination. Gibson testified that during her examination, the complainant reported that "[a] couple years ago, [she] started being touched by [her] stepfather." (Internal quotations omitted.) According to the complainant, her stepfather "would touch [her] where he wasn't supposed to. He put [her] on top of him. One time he put one of his fingers inside of [her]." (Internal quotations omitted.) The complainant reported that her

---

[6] A copy of the complainant's medical records related to her sexual assault examination were admitted into evidence at trial.

stepfather "would come to [her] room" in the morning, lie down in her bed, and "put [her] on top of him." (Internal quotations omitted.) He would then touch her "butt." (Internal quotations omitted.) The complainant had clothes on at the time, and she would pretend that she was asleep because she was uncomfortable. The complainant also stated that when she was five years old, she was lying down in her bed with her face on her pillow. Her stepfather "pulled down [her] pants and underwear and put one of his fingers inside of [her]." (Internal quotations omitted.) When he heard one of the complainant's siblings crying, "he pulled [her] pants up and left." (Internal quotations omitted.) Her stepfather only "put one of his fingers inside of [her]" that one time. (Internal quotations omitted.)

The complainant also reported that she told her aunt about the touching, and her aunt told her maternal grandmother, who called law enforcement officers. The complainant's mother did not believe the complainant and ran away with her stepfather. The complainant was worried about her younger siblings who were still living with her mother and stepfather.

The complainant's mother testified that she and appellant began their relationship in September 2014, and they moved in together about a month later. At the time, the complainant's mother had two children—the complainant and L.G. Appellant was not the complainant's or L.G.'s biological father. Soon after the complainant's mother and appellant's relationship began, the complainant's mother

11

became pregnant with M.R. The complainant's mother and appellant eventually had three children together.

In December 2014, the complainant's mother, appellant, the complainant, and L.G. moved into a guest house behind the complainant's great-grandmother's home. There was a bathroom in that house, but the complainant's mother and appellant decided to remove the bathroom door because it "would make skid marks" on the floor. The family lived in the guest house for about three years. The complainant's mother did not notice any suspicious behavior between appellant and the complainant while living in the guest house.

The complainant's mother and appellant then moved into an apartment for about two years, where they lived with the complainant, L.G., M.R. and M.R. Lucero also lived there for a bit of time. While living in the apartment, the complainant's mother did not notice any suspicious behavior between appellant and the complainant. The complainant's mother, appellant, the complainant, L.G., M.R., and M.R. then moved into a trailer home across the street from Soledad's home in 2020.

According to the complainant's mother, before the complainant came forward with her allegations, the complainant's relationship with appellant was "[p]retty good," and she called him "Dad." When the complainant was nine years old, she got a cellular telephone, but this caused issues because "[s]he was too

12

focused on the phone" and would not do her chores. On the evening of January 31, 2021, appellant took the complainant's cellular telephone away from her. Before going to sleep that night, the complainant's mother heard the complainant and L.G. arguing because L.G. wanted to sleep on the bottom bunk of their bunkbed. The complainant's mother saw appellant come out of the girls' bedroom, and he told her that "he went in to tell them to stop fighting" and "to go to sleep." Appellant then went to sleep in the living room with M.R. Because the complainant's mother was not in the complainant's bedroom that night, she did not know if anything had happened in there.

February 1, 2021 was a regular morning, and appellant went to work. Later, the complainant's mother was woken up by Soledad and told "what [the complainant] had said." Soledad said that if the complainant's mother "didn't do anything [about it], she w[ould]." The complainant's mother then called appellant and told him to come home. When appellant got home, she told him what the complainant had disclosed, and she asked him "if it was true or not." The complainant was present at the time. In response, appellant was "appalled and said that he would never do something like that." The complainant's mother asked appellant to leave the home, and he went back to work. After law enforcement officers arrived, the complainant's mother was present when the complainant

13

spoke to them. According to the complainant's mother, the complainant did not tell the officers that she had been "touched under [her] clothes."

The complainant's mother further testified that when the complainant was five years old, she made an "inappropriate touching" allegation against her biological father. At the time, the complainant told her that she was taking a bath when "her father . . . c[a]me into the bathroom and tried to touch her" "in her private area." The complainant's mother believed that the complainant was not truthful. The complainant's mother did not call law enforcement officers or CPS after the complainant made the outcry related to her biological father.

Finally, the complainant's mother testified that she had spoken to appellant thirteen times in the thirty days leading up to trial, and appellant told her that he would take care of her. The complainant's mother's "life would have been easier if th[e] allegations" against appellant "ha[d] just gone away." The complainant's mother noted that after the complainant's allegations related to appellant came to light, for a period of time, she and appellant left the state.

**Jury Charge Error**

In his first issue, appellant argues that the trial court erred in instructing the jury because the trial court's charge did not "instruct the jury that it must . . . be[] unanimous as to a particular act."

We review complaints of jury-charge error under a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether error exists in the charge, and second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000).

The trial court is required to deliver to the jury a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. The purpose of the jury charge is to inform the jury of the applicable law and guide the jury in its application to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). This means that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id.* (internal quotations omitted); *see also Ngo*, 175 S.W.3d at 745 ("Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act."). Relevant here, non-unanimity may result if "the

State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio*, 353 S.W.3d at 772. In such a case, each of the multiple incidents individually establishes a different offense or unit of prosecution. *Id.* To ensure unanimity, the trial court's charge should "instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.*

Here, the jury found appellant guilty of the felony offense of indecency with a child. The trial court's charge to the jury instructed that "a person commits the offense of indecency with a child if, with a child younger than seventeen years of age, whether the child is of the same or opposite sex, he engages in sexual contact with the child or causes the child to engage in sexual contact." *See* TEX. PENAL CODE ANN. § 21.11(a)(1). The charge defined "sexual contact" as "any touching by a person, including through clothing, of the anus, breast, or any part of the genitals of a child" or "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person with the intent to arouse or gratify the sexual desire of any person." *See id.* § 21.11(c). Further, the charge instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 10th day of February, 2018, in Harris County, Texas, the defendant, Jose Alberto Rodriguez, did then and there unlawfully, intentionally or knowingly engage in sexual contact with [the complainant], a child under the age of seventeen years, by touching the genitals of [the complainant] with the intent to arouse or gratify

16

the sexual desire of the defendant, then you will find the defendant guilty of indecency with a child.

*See id.* § 21.11(a)(1), (c).

The complainant testified[7] that when she was about eight years old, she was lying down on her stomach in the living room of a guest house. On that occasion, appellant touched her vagina and put one of his fingers inside her vagina. *See id.* Such an incident would constitute "sexual contact" as defined by the Texas Penal Code and the trial court's charge to the jury. *See id.* § 21.11(c).

Appellant, in his briefing, asserts that other "extraneous offenses" that were introduced at trial could "meet the requirements for a conviction of indecency [with a child] by contact." This evidence purportedly includes "an accusation that some nights [appellant] would have [the complainant] lay on top of him and he would grab her butt under her underwear."[8] But such evidence does not meet the definition of "sexual contact." *See id.* ("sexual contact" means "any touching by a person, including through clothing, of the *anus, breast*, or any part of the *genitals* of a child" (emphasis added) (internal quotations omitted)); *see also Marquez v.*

---

7   The uncorroborated testimony of a child complainant alone is sufficient to support a conviction for the offense of indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07; *Ryder v. State*, 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd) (testimony of child victim alone sufficient to support conviction for offense of indecency with child).

8   Appellant also cites testimony from a Texas Code of Criminal Procedure article 38.072 hearing, which took place outside the presence of the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Appellant cannot rely on such testimony to support his unanimity complaint.

17

*State*, No. 04-20-00014-CR, 2021 WL 2814907, at *5 (Tex. App.—San Antonio July 7, 2021, no pet.) (mem. op., not designated for publication) (noting if jury only believed complainant's "initial outcry . . . that [defendant] had 'touched [the complainant's] butt,'" then "there was no crime under the specific charges," i.e., aggravated sexual assault of child and indecency with child by sexual contact, that defendant "was facing"); *cf. Saldaña v. State*, 287 S.W.3d 43, 61 (Tex. App.—Corpus Christi–Edinburg 2008, pet. ref'd) (courts have "allowed juries to infer that a child's reference to an act performed 'in the butt' or the place where the child goes to the bathroom is sufficient to identify the anus").

Here, the State did not present evidence that appellant committed the offense of indecency with a child on multiple but separate occasions. Instead, a review of the record shows that there was only one incident constituting "sexual contact" upon which appellant's conviction for the offense of indecency with a child could be based. As such, we conclude that an instruction on unanimity as to the incident forming the basis of the conviction was not required; the jury's finding of guilt for the offense of indecency of a child was necessarily unanimous regarding the incident forming the basis of the conviction. *See, e.g.*, *Barcenas v. State*, No. 05-23-01218-CR, 2025 WL 642396, at *1–2 (Tex. App.—Dallas Feb. 27, 2025, no pet.) (mem. op., not designated for publication); *Jones v. State*, No. 05-22-00827-CR, 2024 WL 3770371, at *6 (Tex. App.—Dallas Aug. 13, 2024,

18

pet. ref'd) (mem. op., not designated for publication) (there was no risk that non-unanimity might occur where State only presented evidence of "one instance of [defendant] . . . squeezing [the complainant's] breast with his hand"). Accordingly, we hold that the trial court did not err in failing to include an instruction in its charge that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Cosio*, 353 S.W.3d at 771 (internal quotations omitted).

We overrule appellant's first issue.

## Sufficiency of Evidence

In his fourth issue, appellant argues that the evidence is legally insufficient to support his conviction because "the State failed to prove that [appellant] touched the complainant with the intent to arouse or gratify the sexual arousal of any person."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755

19

S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the responsibility of the fact finder to resolve conflicts fairly in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence and any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most

favorable to the jury's verdict. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13. The jury, as the judge of the facts and credibility of the witnesses, could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Relevant to this case, a person commits the offense of indecency with a child if he engages in sexual contact with a child that is younger than seventeen years old. TEX. PENAL CODE ANN. § 21.11(a)(1). A person engages in "sexual contact" if he, with the intent to arouse or gratify his sexual desire, touches, including touching through clothing, the anus, breast, or any part of the genitals of a child. *See id.* § 21.11(c). On appeal, appellant asserts that there was insufficient evidence to support the "intent to arouse or gratify his sexual desire" element of the offense.

Intent to arouse or gratify a defendant's sexual desire may be inferred from the defendant's conduct, remarks, and all the surrounding circumstances, including a common pattern of similar acts. *McDonald v. State*, 148 S.W.3d 598, 600 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 179 S.W.3d 571 (Tex. Crim. App. 2005). Although the offense of indecency with a child requires proof of the intent to arouse or gratify sexual desire, it does not require proof that arousal or gratification actually occurred. *Caballero v. State*, 927 S.W.2d 128, 130 (Tex. App.—El Paso 1996, pet. ref'd). Further, no oral expression of intent or visible evidence of sexual

21

arousal is necessary. *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd).

Here, the complainant testified that she started wearing a bra when she was eight years old. Further, around the time that she was eight years old, appellant touched her in the guest house behind her great grandmother's home. According to the complainant, she was lying down on her stomach in the living room when appellant touched her vagina over her clothes and then put one of his fingers inside her vagina. *See, e.g.*, *Maestas v. State*, No. 07-23-00438-CR, 2024 WL 3886159, at *2 (Tex. App.—Amarillo Aug. 20, 2024, no pet.) (mem. op., not designated for publication) ("[T]he conduct itself is sufficient to infer intent." (internal quotations omitted)); *Abbott v. State*, 196 S.W.3d 334, 340–41 (Tex. App.—Waco 2006, pet. ref'd) ("[T]he jury could infer from [the defendant's] conduct of touching [the complainant's] genitals that it was done with the intent to arouse and gratify his sexual desire."); *see also Blair v. State*, No. 13-02-709-CR, 2004 WL 593694, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2004, no pet.) (mem. op., not designated for publication) ("A child's description of sexual contact is sufficient evidence from which a fact finder may infer the intent-to-gratify element of indecency with a child."); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (holding complainant's testimony that defendant's hand had encircled her breast was sufficient evidence for rational trier

22

of fact to find that defendant had touched child with intent to arouse his sexual desire). The complainant's mother and siblings were asleep at the time.

Additionally, prior to that incident, when the complainant was about seven years old, appellant touched her "inappropriately" while at the guest house. The complainant was in the bathroom, wearing underwear, when appellant came in and sat on the toilet. Appellant then sat the complainant on his lap and "grabbed [her] thigh," "kind of [going] upwards from there." Appellant only touched the complainant's thigh, but it made her feel uncomfortable. *See, e.g.*, *Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at *9 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication) (considering defendant's sexual conduct had progressed gradually when holding defendant's conduct alone was sufficient to infer intent). The complainant's mother was sleeping in her bedroom at the time, and appellant told the complainant not to tell anyone. *See, e.g.*, *Arellanes v. State*, No. 05-18-00429-CR, 2018 WL 3629087, at *3 (Tex. App.—Dallas July 31, 2018, pet. ref'd) (mem. op., not designated for publication) (jury could have found beyond reasonable doubt that defendant acted with intent to gratify his sexual desire where complainant testified that he touched her breasts and told complainant "it's our secret" (internal quotations omitted)).

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt

23

that appellant acted with the intent to arouse or gratify his sexual desire.[9] Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's fourth issue.

## Admission of Evidence

In his second issue, appellant argues that the trial court erred in admitting certain extraneous offense evidence because he was not provided proper notice under Texas Code of Criminal Procedure article 38.37. In his third issue, appellant argues that the trial court erred in allowing the State to impeach the complainant's mother during her testimony because the State's questions violated Texas Rule of Evidence 403.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d

---

[9] To the extent appellant seeks to challenge the credibility of the State's witnesses' testimony in asserting that the evidence was legally insufficient to support a finding of the requisite intent, the jury was the sole judge of the credibility of the witnesses at trial, and we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## A.    Extraneous Offense Evidence

In his second issue, appellant argues that the trial court erred in admitting the complainant's testimony that appellant had a "[h]ard" penis because he was not provided sufficient notice of the extraneous offense under Texas Code of Criminal Procedure 38.37.

"An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused." *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (internal quotations omitted). A trial court's ruling on the admission of extraneous offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz*, 279 S.W.3d at 344.

Generally, Texas Rule of Evidence 404(b) prohibits the admission of extraneous offense evidence to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). To be admissible, the extraneous offense evidence must pass a two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) the extraneous offense evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and (2) the probative value of the evidence is not substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Extraneous offense evidence may be relevant to "show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *see* TEX. R. EVID. 404(b)(2).

Notably, under Texas Code of Criminal Procedure article 38.37, when a defendant is being prosecuted for the offenses of aggravated sexual assault of a child or indecency with a child, evidence of "other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense" may be admitted "for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent

26

relationship between the defendant and the child." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b); *see also Jeansonne v. State*, 624 S.W.3d 78, 94–95 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("Essentially, article 38.37 is an evidentiary rule applicable to certain types of sexual abuse cases . . . that supersedes the application of Texas Rule of Evidence 404(b), and makes admissible certain extraneous offense evidence that [r]ule 404(b) does not."). Further, evidence that the defendant committed one or more of certain enumerated sexual offenses against a child "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *see also Wishert v. State*, 654 S.W.3d 317, 330 (Tex. App.—Eastland 2022, pet. ref'd) ("Article 38.37, [s]ection 2(b) allows for the admission of evidence that the defendant . . . committed a separate offense of a sexual nature against a child . . . ." (emphasis omitted)).

To admit extraneous offense evidence under Texas Code of Criminal Procedure article 38.37, the State must give a defendant, at least thirty days before trial, notice of its intention to introduce evidence of other offenses, crimes, wrongs, or acts the defendant committed as permitted by article 38.37. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. The purpose of the notice requirement is to prevent surprise and enable a defendant adequate time to prepare for the State's

27

introduction of extraneous offense evidence at trial. *See Jeansonne*, 624 S.W.3d at 98. To preserve error regarding the State's failure to provide notice under article 38.37 of its intent to use extraneous offense evidence, the defendant must request a continuance to mitigate the effects of surprise. *See Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Koffel v. State*, 710 S.W.2d 796, 802 (Tex. App.—Fort Worth 1986, pet. ref'd).

Here, the complainant testified that while living with appellant, he came into her bed often and put her on top of him so that they were lying chest to chest. Appellant "put his hands down [her] pants and grab[bed] [her] from [her] butt," "[u]nder her underwear." Appellant had his clothes on, but he moved the complainant's body. When this happened, the complainant could feel appellant's "[h]ard" penis.

After the complainant testified about appellant's penis, appellant objected that he did not "have notice of this." But appellant did not specifically object to the admission of the complainant's testimony on the basis that the State failed to provide the thirty-day notice required by Texas Code of Criminal Procedure article 38.37. Appellant also did not assert in the trial court that he was surprised by the testimony or that he was not able to adequately prepare for the State's introduction of the evidence based on the article 38.37 notice violation. *See Jeansonne*, 624 S.W.3d at 98.

To preserve error for appellate review, an appellant must present a timely complaint to the trial court stating the specific grounds for the desired ruling "with sufficient specificity to make the trial court aware of the complaint" if it is not apparent from the context of the complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A).

Further, a party fails to preserve error when the contention urged on appeal does not match the specific complaint made in the trial court. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005). In other words, an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *see also Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) ("Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review."). A court of appeals should not address the merits of an issue if it has not been preserved for appeal. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Although appellant asserts on appeal that the trial court erred in admitting the complainant's testimony about his penis because he did not receive proper notice under Texas Code of Criminal Procedure article 38.37, he did not mention article 38.37 in his objection, and it was not clear from the context that he was

29

making such an objection. Notably, Texas Rule of Evidence 404(b) contains a "reasonable notice" requirement that must be complied with before the State may introduce evidence of a crime, wrong, or other act committed by the defendant, and appellant could have been referring to a lack of notice under rule 404(b) in making his objection. *See* TEX. R. EVID. 404(b)(2) ("On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief."). Certainly, it is not clear from the context the precise objection appellant sought to make.

Accordingly, we hold that appellant did not preserve his complaint about the complainant's testimony about his penis for appeal. *Cf. Kisijara v. State*, No. 01-23-00534-CR, 2025 WL 1160688, at *5 (Tex. App.—Houston [1st Dist.] Apr. 22, 2025, no pet. h.) (mem. op., not designated for publication) (holding defendant did not preserve complaint he did not receive notice of extraneous offense as required by article 38.37).

Additionally, we note that appellant, in the trial court, did not request a continuance after learning about the complainant's testimony about his penis. Having failed to do so, appellant waived any complaint about surprise by the State's lack of timely notice under Texas Code of Criminal Procedure article

30

38.37. *See Martines*, 371 S.W.3d at 249; *see also Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.).

We overrule appellant's second issue.

## B. Impeachment Evidence

In his third issue, appellant argues that the trial court erred in allowing the State to impeach the complainant's mother during her testimony because the State's questions violated Texas Rule of Evidence 403 as "impeachment was not compelling for any purpose," "[t]he impeachment evidence did impress the jury in an irrational but nevertheless indelible way," "[t]he time spent to develop th[e] testimony distracted the jury from the trial," and "[t]he State did not need the evidence as it did not assist in proving an issue in dispute." *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."); *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (listing criteria relevant to determining whether prejudice outweighs probative value of evidence).

As previously noted, to preserve error for appellate review, an appellant must present a timely complaint to the trial court stating the specific grounds for the desired ruling "with sufficient specificity to make the trial court aware of the complaint" if it is not apparent from the context of the complaint. *See* TEX. R. APP. P. 33.1(a)(1)(A). Generally, the appellant must continue to object each time

inadmissible evidence is offered, unless he obtains a running objection or requests

a hearing outside the presence of the jury. *Martinez v. State*, 98 S.W.3d 189, 193

(Tex. Crim. App. 2003).

Further, as noted above, a party fails to preserve error when the contention

urged on appeal does not match the specific complaint made in the trial court.

*Clark*, 365 S.W.3d at 339; *Sorto*, 173 S.W.3d at 476. An objection stating one

legal basis may not be used to support a different legal theory on appeal. *See*

*Heidelberg*, 144 S.W.3d at 537; *Broxton*, 909 S.W.2d at 918; *see also Wright*, 154

S.W.3d at 241. We do not address the merits of an issue if it has not been

preserved for appeal. *See Ford*, 305 S.W.3d at 532.

On appeal, appellant appears to complain about the following questions

asked by the State during the complainant's mother's testimony[10]:

- "In fact, you're still legally married to [the complainant's father],
aren't you?"

---

[10] Although appellant directs this Court to certain pages of the complainant's mother's testimony in the reporter's record, he does not pinpoint line numbers to make clear which exact questions he complains about the trial court allowing the State to ask and be answered. *See* TEX. R. APP. P. 38.1(i); *Thomas v. State*, 701 S.W.2d 653, 662 (Tex. Crim. App. 1985) ("It is well settled that mere references to pages in the record does not sufficiently identify testimony, the objections thereto, and the court's rulings thereon to constitute a ground of error."); *Thierry v. State*, 288 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We have done our best to determine appellant's complaints based on the page numbers referenced in appellant's briefing. *See Ahmad v. State*, 615 S.W.3d 496, 502 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (appellate court need not "scour the records" to support appellant's assertion of error).

- "It was common for you to seclude yourself in your bedroom and leave your children to fend for themselves, wasn't it?"

- "You didn't routinely cook or clean for your family, did you?"

- "And it's true that you expected [the complainant] to care for her siblings while you slept in, isn't it?"

- "So you expected [the complainant] to change diapers, didn't you?"

- "You expected her to feed her siblings, didn't you?"

- "In fact, [the complainant] had to heat you up food at times or make you sandwiches, didn't she?"

- "It's true that Lucero, not you, got the girls logged in every morning on Zoom to attend their classes, isn't it?"

- "It's true that you've never worked for any stretch of time?"

- "[Y]ou didn't work the entire time that you were living with [appellant], correct?"

- "So you're telling this jury that you have not spoken to [appellant]?"

- "When was the last time you spoke to him?"

- "And in those calls, you each profess your love for each other[?]"

- "Have you told [appellant] that you loved him?"

- "[On February 1, 2021, Soledad] found you asleep in your bedroom? . . . And this was 9:00, 9:30 in the morning, or later?"

- "And then on February 2nd, the very next day, CPS calls you on the phone, correct? . . . This was not your first run-in with CPS,

was it? . . . Then on February 3rd, CPS came to the house . . . to conduct a home visit, correct?"

- "And CPS told you that the case was being referred to family-based safety services, didn't she? . . . And CPS told you that [appellant] could not have any contact with [the complainant] or [L.G.], right? . . . And CPS also told you that [appellant] could not have anything but supervised contact with his three biological children, correct?"

- "And shortly after that, CPS came to that hotel and did another home visit, correct? . . . CPS asked you for contact information for [appellant]?"

- "[Y]ou, [appellant], [M.R.], and [M.R.] left the State of Texas and were found in Los Angeles, California, weren't you?"

- "And [the Los Angeles Police Department ("LAPD")] came to conduct a welfare check on 3/15/21, didn't they?"

- "Then just seven days after LAPD does a welfare check at your hotel, you and [appellant] and your kids end up in Oklahoma, correct?"

- "It's fair to say that in at least the last five years you've been an absentee parent, isn't it?"

- "The truth is you fabricated that statement, didn't you? . . . You lied. [The complainant] never told you that, did she? . . . You fabricated that statement because you were trying to get money out of your ex-husband[?]"[11]

---

[11] Appellant, in his briefing, also references another question by the State during the complainant's mother's testimony, namely: "You[] have relied on a man, your significant other, for financial security throughout your adult life?" Appellant objected to the question based on relevance and asked the trial court to strike the question. The trial court granted appellant's request to strike and told the jury to "disregard the last question by the [State]." When an appellant has been given all the relief he requested at trial, there is nothing to complain about on appeal. *Cook*

34

Appellant only objected at trial to one of the above questions asked by the State, namely: "And LAPD came to conduct a welfare check on 3/15/21, didn't they?"  Thus, appellant's complaints about the other questions asked by the State have not been preserved for appellate review.  *See* TEX. R. APP. P. 33.1(a); *Clark*, 365 S.W.3d at 339.  As to appellant's complaint about the State's "welfare check" question, in the trial court, appellant objected to the question based on "[r]elevance."  *See* TEX. R. EVID. 401, 402 (providing only relevant evidence, not prohibited by statute or rule, is admissible).  However, on appeal, appellant argues that the State should not have been permitted to ask the question based on Texas Rule of Evidence 403.  *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.").  "Where a trial court objection does not comport with the [complaint] raised on appeal, [an] appellant . . . preserve[s] nothing for [our] review."  *Wright*, 154 S.W.3d at 241; *see also Rasberry v. State*, Nos. 02-14-00128-CR, 02-14-00141-CR, 2015 WL 6081891, at *14 (Tex. App.—Fort Worth Oct. 15, 2015, pet. ref'd) (mem. op., not designated for publication) ("[A] general relevance objection is not the same as a

---

*v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *McBride v. State*, 359 S.W.3d 683, 689 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

35

rule 403 objection . . . ."); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("[A] specific rule 403 objection must be raised to preserve error.").

To assert that he preserved his complaints about the above questions asked by the State during the complainant's mother's testimony, appellant, in his briefing, directs the Court to a preliminary hearing, outside the presence of the jury, on appellant's motion in limine through which appellant sought to prevent the State from eliciting testimony about "misconduct of defense witnesses."[12] The trial court overruled appellant's request and told appellant he could make an objection during trial. A trial court's denial of a motion in limine is a preliminary ruling only and preserves nothing for appellate review. *See Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985) ("For error to be preserved with regard to the subject matter of the motion in limine it is absolutely necessary that an objection be made at the time when the subject is raised during trial"). Appellant's counsel then acknowledged to the trial court that he "c[ould] approach during trial regarding a balancing test specifically regarding any instances [the State] wants to bring up . . . . [W]e'll talk about it then, Your Honor."

---

[12]   Appellant asserts in his briefing that he made "an offer of proof of what testimony was anticipated" during the hearing, but this is factually incorrect.

Based on the foregoing, we hold that appellant did not preserve his complaint about the State's questions it asked the complainant's mother during her testimony.

We overrule appellant's third issue.

**Imposition of Fine**

In his fifth issue, appellant argues that the trial court erred in assessing a $100 fine against him because it was not orally pronounced in appellant's presence. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03. Appellant requests that the Court modify the trial court's judgment to delete the fine. TEX. R. APP. P. 43.2(b).

The State concedes that the trial court erred by assessing the $100 fine against appellant but argues that the trial court erred because appellant committed his offense in 2018 and the current statutory "framework [for] the $100 fine associated with all child sexual abuse cases did not exist at the time of [a]ppellant's offense." *See generally* TEX. CODE CRIM. PROC. ANN. art. 102.0186(a) ("A person convicted of [the] offense [of indecency with a child] shall pay a fine of $100 on conviction of the offense."). The State requests that the Court modify the trial court's judgment to delete the fine, but it also asks the Court to remand the case to the trial court to assess the $100 fine as a court cost against appellant.

"A trial court's pronouncement of a sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment

of that oral pronouncement." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). "When there is a conflict between the oral pronouncement of sentence in open court and the sentence set out in the written judgment, the oral pronouncement controls." *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). "The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Id.*; *see also Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (acknowledging appellate courts have power to modify judgment to speak truth when they are presented with necessary information to do so).

The trial court's written judgment reflects that it assessed appellant's punishment for the offense of indecency with a child at confinement for fifteen years and a fine of $100. However, the trial court orally pronounced appellant's sentence at confinement for fifteen years for the offense, with no mention of a fine. Because a fine is punitive in nature and intended to be part of a defendant's sentence, to be assessed against a defendant, it must be orally pronounced at sentencing. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011); *Rhodes v. State*, No. 11-24-00018-CR, --- S.W.3d ---, 2025 WL 1129021, at *5 (Tex. App.—Eastland Apr. 17, 2025, no pet. h.). Thus, typically, when a fine has not been included in the trial court's oral pronouncement, this Court modifies the

38

trial court's written judgment to delete the fine amount. *See, e.g.*, *Levingston v. State*, No. 01-10-00561-CR, 2011 WL 5599973, at *1–2 (Tex. App.—Houston [1st Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication) (modifying trial court's judgment to delete fine that was not orally pronounced by trial court at sentencing).

Here, however, the State requests that we not only modify the trial court's judgment to delete the fine, but also asks the Court to remand the case to the trial court to assess a $100 court cost against appellant because the $100 assessed as a fine by the trial court should have been imposed as a court cost under the former version of Texas Code of Criminal Procedure article 102.0186.

The $100 fine assessed against appellant by the trial court in its written judgment, i.e., the Child Abuse Prevention fine, was done so pursuant to Texas Code of Criminal Procedure article 102.0186. TEX. CODE CRIM. PROC. ANN. art. 102.0186(a). Before January 1, 2020, this fine was classified as a court cost known as the Child Abuse Prevention fee. *See Yon v. State*, 440 S.W.3d 828, 834 (Tex. App.—Tyler 2013, no pet.) (modifying amount of court costs in trial court's judgment because "Child Abuse Prevention Fee" was improperly included (internal quotations omitted)). The "Cost Act," which became effective on January 1, 2020, amended article 102.0186 to, among other things, reclassify the $100 Child Abuse Prevention fee as a fine, rather than a court cost. *See* Act of May 23,

2019, 86th Leg., R.S., ch. 1352, §§ 2.40, 5.01, 5.04, 2019 Tex. Gen. Laws 3981, 4006, 4035; *Rhodes*, 2025 WL 1129021, at *6. As to its "Transition and Effective Date," the Cost Act provides:

> SECTION 5.01. Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act. *An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed*, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

*See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 5.01, 2019 Tex. Gen. Laws 3981, 4035–36 (emphasis added); *see also Rhodes*, 2025 WL 1129021, at *6 (quoting section 5.01 of Cost Act).

Appellant committed the offense of indecency with a child in 2018. Recently, after the parties filed their briefs in this appeal, the Court of Criminal Appeals addressed the operation and effect of the Cost Act's "Transition and Effective Date" clause found in section 5.01 and the "Imposition of Court Costs in Criminal Proceedings" statute found in Texas Government Code section 51.608. *See Bradshaw v. State*, 707 S.W.3d 412, 416–20 (Tex. Crim. App. 2024); *see also* TEX. GOV'T CODE ANN. § 51.608. Notably, section 51.608 provides:

> Notwithstanding any other law that establishes the amount of a court cost collected by the clerk of a district, county, or statutory county court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed, *the amount of a court*

*cost imposed on the defendant in a criminal proceeding must be the amount established under the law in effect on the date the defendant is convicted of the offense.*

TEX. GOV'T CODE ANN. § 51.608 (emphasis added); *see also Rhodes*, 2025 WL 1129021, at *6 (quoting Imposition of Court Costs in Criminal Proceedings statute).

In *Bradshaw*, the Court of Criminal Appeals harmonized the Cost Act's "Transition and Effective Date" clause and the Imposition of Court Costs in Criminal Proceedings statute and determined that "[t]he law governing court costs on the date of the offense was committed states [that] court costs are determined based on the date the defendant is convicted of the offense." *Bradshaw*, 707 S.W.3d 420 (citing TEX. GOV'T CODE ANN. § 51.608); *see also Rhodes*, 2025 WL 1129021, at *6; *Joseph v. State*, No. 01-23-00937-CR, 2025 WL 714982, at *2–3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2025, no pet.) (mem. op., not designated for publication) (discussing *Bradshaw* and explaining court costs should be assessed based on date of conviction, rather than date of offense).

Because appellant was convicted of the offense of indecency with a child on October 4, 2023, the provisions of the Cost Act apply here. *See Bradshaw*, 707 S.W.3d at 417–20; *see also Rhodes*, 2025 WL 1129021, at *6. The Cost Act reclassifies the $100 Child Abuse Prevention fee as a fine, rather than a court cost. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 2.40, 2019 Tex. Gen. Laws

3981, 4006 (codified at TEX. CODE CRIM. PROC. ANN. art. 102.0186). Thus, had the trial court included the Child Abuse Prevention fine in its oral pronouncement of appellant's sentence, then the $100 fine would have been properly assessed against appellant. However, because the $100 Child Abuse Prevention fine was not orally pronounced by the trial court at sentencing, we conclude that it was improperly included in the trial court's written judgment.

Based on the foregoing, we modify the trial court's judgment and the district clerk's bill of costs to delete the $100 Child Abuse Prevention fine assessed against appellant. *See Rhodes*, 2025 WL 1129021, at *6–7 (modifying trial court's judgment and bill of costs to delete $100 Child Abuse Prevention fine because not orally pronounced by trial court at sentencing); *see also* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28. We deny the State's request to remand the case to the trial court to reclassify the $100 fine as a court cost.

We sustain appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court as modified.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Publish.  TEX. R. APP. P. 47.2(b).